No. 90-517

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

KEESUN PARTNERS,
a Wyoming general partnership,

       Plaintiff and Respondent,

  -vs-

FERDIG OIL COMPANY, INC. a corporation;
and SOMONT OIL CO., INC., a corporation,

       Defendants, Counterclaimants and Appellants,

  -vs-

KEESUN PARTNERS, a Wyoming general partnership,
consisting of V.C. KNIGHT, J. KENNETH FINSTAD,
RONALD VANDERHOEF, individually, and as partners;
and JOHN DOES 1, 2, 3, 4, and 5 and DOE COMPANIES
1 and 2, corporations, individually, and as partners
of Keesun partnership,

       Counterdefendants.

FILED

AUG - 1 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Ninth Judicial District,
                In and for the County of Toole,
                The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          Gregory H. Warner and George R. Crotty, Jr.;
          Graybill, Ostrem, Warner & Crotty, Great Falls,
          Montana

      For Respondent:

          Carolyn Ostby; Crowley, Haughey, Hanson, Toole &
          Dietrich, Billings, Montana

                   Submitted on Briefs:  May 24, 1991

                             Decided:  August 1, 1991

Filed:

—————————————————————
                             Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The appellants, Ferdig Oil Company, Inc. and Somont Oil Co., Inc. (referred to collectively as Ferdig/Somont), appeal from an order of the District Court of the Ninth Judicial District, Toole County, granting partial summary judgment in favor of the respondent, Keesun Partners. We affirm.

Ferdig/Somont raises the following issues on appeal:

1. Did the District Court err in determining that there are no genuine issues of material fact as to the absence of a contract between the parties?

2. Did the District Court err in holding that even if a contract did exist between the parties, its enforcement is barred by the statute of frauds?

3. Did the District Court err in refusing to consider remedies of rescission or restitution and the return of the parties to the status quo in granting quiet title relief?

The appellants, Ferdig Oil Company, Inc. and Somont Oil Co., Inc., are Montana corporations in oil and gas production and processing. Both corporations have the same ownership and same management. Charles Jansky is an officer of both corporations. Ferdig is involved primarily in the gathering and processing of natural gas. Somont is involved primarily in the production of oil and natural gas. The respondent, Keesun Partners, is a Wyoming oil and gas producing partnership which was formed in October of 1987. J. Kenneth Finstad is a partner in Keesun and acts as operations manager.

2

Ferdig/Somont constructed and operates a gas processing plant located in Section 28 of Township 35 North, Range 4 West, Toole County, Montana. The original intent of Ferdig/Somont in constructing the plant was to process both sweet and sour gas from its own wells located adjacent to the plant. In the summer of 1987, Ferdig/Somont presented its lenders with proposals which called for extending its gas gathering pipeline system through the northern part of Township 35 North, Range 4 West into the southern part of Township 36 North, Range 4 West. Ferdig/Somont determined that its own well in Section 34 of Township 36 North, Range 4 West, along with another well in that section, justified the installation of that pipeline.

Shortly thereafter, Mr. Jansky and Mr. Finstad discussed the possibility of a market for gas from additional wells drilled in Section 34. On September 16, 1987, Mr. Jansky sent a letter to Mr. Finstad and Don Lee, a Shelby attorney who represented both Ferdig/Somont and Finstad. The stated purpose of the letter was to "summarize the deal we [Ferdig/Somont] are proposing to enter into with Mr. Finstad, et al." for the purchase of wellhead gas on a long-term basis. Neither Mr. Finstad nor Keesun, after its formation in October of 1987, responded in writing to Mr. Jansky's letter.

Keesun pursued its drilling activities on acreage controlled by Keesun and on acreage acquired from Ferdig/Somont and others through farmout agreements or outright assignments. Although no written gas purchase contract was in place, Ferdig/Somont took

3

deliveries of gas from Keesun on a month to month basis. The parties apparently were hopeful that an acceptable gas purchase contract would eventually be agreed upon and executed.

Contemporaneous with Keesun's drilling activities, Mr. Jansky sent a number of letters to Keesun setting forth his understanding of the state of the negotiations, summarizing proposals and making new offers. Keesun did not respond in writing to any of this correspondence; it does appear from the record that ongoing negotiations occurred, either directly or through attorney Don Lee.

Eventually, a meeting between Keesun and Ferdig/Somont was held on March 3, 1988, at Don Lee's office in an attempt to finalize a wellhead gas purchase contract between the parties. The following day, Mr. Jansky wrote Keesun another letter in which he summarized those terms he believed had been agreed upon and, in addition, listed eighteen proposed terms "still pending agreement." Mr. Jansky wrote: "Those things still pending agreement are summarized in our offer presented below, for you to either accept or reject." Ferdig/Somont thereafter instructed Don Lee to prepare a draft wellhead gas purchase contract which was then forwarded to Keesun for review.

On May 18, 1988, Keesun communicated its dissatisfaction with the draft contract to Don Lee who, in turn, informed Ferdig/Somont that Keesun did not agree with the proposed gas purchase contract. That same day, Mr. Jansky wrote Keesun a letter alleging that Keesun had breached "its contractual obligations." He stated that Ferdig/Somont would release Keesun from those obligations on the

4

condition that Keesun relinquish title to four producing wells and the leases upon which those wells were located in Section 27 of Township 36 North, Range 4 West, and Section 19 of Township 36 North, Range 3 West. In his letter, Mr. Jansky stated that Ferdig/Somont had assigned this acreage to Keesun "in reliance on the fact that Keesun represented it would enter into a long term gas sales contract" with Ferdig/Somont. He also stated that since all the "acreage . . . was acquired from or via [Ferdig/Somont] in accordance with the agreement since breached by Keesun, [Ferdig/Somont] wants all this land back." In another letter dated May 24, 1988, Mr. Jansky informed Keesun that Ferdig/Somont intended to proceed as "equitable owner" of the disputed wells, and that a "Notice of Interest" to that effect had been recorded in Toole County.

On June 21, 1988, Keesun filed a complaint in the District Court of the Ninth Judicial District, Toole County, seeking relief against Ferdig/Somont on four counts. Count I sought quiet title relief for the disputed oil and gas leasehold interests held by Keesun; Count II sought declaratory relief that Ferdig/Somont had no right to operate or control the four producing gas wells drilled by Keesun on the leases described in Count I; Count III sought declaratory relief that Ferdig/Somont had no rights to leases acquired by Keesun in the future; and Count IV sought an accounting and payment for deliveries by Keesun to Ferdig/Somont of gas from the disputed wells.

Ferdig/Somont filed a motion to dismiss which was briefed by

5

the parties. Prior to a ruling on the motion to dismiss, Keesun filed a motion for partial summary judgment as to Counts I, II and IV of its complaint. This motion was briefed by the parties and, on January 25, 1990, argued to the District Court.

Ferdig/Somont's motion to dismiss was subsequently denied. Thereafter Ferdig/Somont filed its "Answer, Affirmative Defenses and Counterclaims." This pleading set forth numerous affirmative defenses and counterclaims most of which were premised upon an alleged contractual relationship between Keesun and Ferdig/Somont for the purchase of wellhead gas.

The parties then commenced discovery. Shortly before the discovery deadline, the District Court granted partial summary judgment to Keesun on July 23, 1990. The court stated that its reason for granting partial summary judgment was that:

> There is nothing before the Court to suggest there is a contract between the parties. There is nothing before the Court that would take the contract between the parties, if there were one, out of the statute of frauds.

The District Court's judgment quieted title to the disputed leases and wells in Keesun and ordered payment to Keesun for all gas delivered to Ferdig/Somont from the disputed wells. The court certified its judgment as final pursuant to Rule 54(b), M.R.Civ.P.

Ferdig/Somont then moved the District Court to alter or amend its order granting Keesun partial summary judgment. The court did not rule on this motion within 45 days and, therefore, the motion was deemed denied pursuant to Rule 59(g), M.R.Civ.P. This appeal followed.

The first issue on appeal is whether the District Court erred

6

in determining that there are no genuine issues of material fact as to the absence of a contract between the parties. Summary judgment is properly granted where the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. The party seeking summary judgment has the burden of demonstrating the absence of genuine factual issues. O'Bagy v. First Interstate Bank (1990), 241 Mont. 44, 46, 785 P.2d 190, 191. If the movant has met this burden, the burden then shifts to the non-moving party to demonstrate a genuine issue of material fact. O'Bagy, 241 Mont. at 46, 785 P.2d at 191. To meet this burden, the non-moving party must proffer substantial evidence, not mere speculation and conclusory statements. Hando v. PPG Indus., Inc. (1989), 236 Mont. 493, 497, 771 P.2d 956, 959; Frigon v. Morrison-Maierle, Inc. (1981), 233 Mont. 113, 117, 760 P.2d 57, 60.

No evidence exists in the record of a signed written contract between the parties. Therefore, the initial question with which we are faced is whether an oral contract existed between the parties for the purchase of wellhead gas. Ferdig/Somont contends that a valid oral contract was entered into by the parties or that, at a minimum, factual issues exist regarding the formation of a contract. According to Ferdig/Somont, an agreement was reached between the parties in which Keesun would sell its gas to Ferdig/ Somont for a period of twenty years. Ferdig/Somont contends that the September 16, 1987 letter from Mr. Jansky to Mr. Finstad and attorney Don Lee set forth the terms of, and confirmed, that

agreement. Ferdig/Somont further contends that Mr. Jansky's correspondence with Keesun and Don Lee after the September 16th letter merely reflected negotiations between the parties regarding optional additions to and modifications of the basic agreement for the purchase of wellhead gas.

In support of its contention that a contract was entered into between the parties, Ferdig/Somont refers to a portion of Mr. Finstad's deposition and argues that he testified that Keesun had accepted the proposed wellhead gas purchase contract as set forth in the September 16, 1987 letter:

> Q [By Mr. Crotty] Is there anything in that letter that you did not agree with?
>
> MS. OSTBY: Objection. The question is too general.
>
> A The essence of the proposed well head purchase contract we . . . I agreed to.

Ferdig/Somont also refers to a portion of Don Lee's deposition with regard to the meeting he attended with the parties on March 3, 1988 as further support that the parties had reached an agreement.

> What I recall is when everybody left and went out the door that whatever had been discussed at that meeting was agreed upon, other than the quantum of overriding royalty that Somont would be entitled to on various leases.

All contracts must contain four essential elements. These elements are: (1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) consideration. Section 28-2-102, MCA. The issue of whether or not there was a contract in this case relates to the requirement of consent.

8

There must be mutual assent or a meeting of the minds on all essential terms to form a binding contract. Chadwick v. Giberson (1980), 190 Mont. 88, 92, 618 P.2d 1213, 1215. Consent is established when there has been an offer and an acceptance of that offer. More specifically, this Court has stated that in order to effectuate a contract there must be not only a valid offer by one party, but also an unconditional acceptance, according to its terms, by the other. Kuchinski v. Security General Ins. Co. (1963), 141 Mont. 515, 519, 380 P.2d 889, 891. In this case, the purported contract fails for lack of consent.

The record indicates that, although some of the terms of the wellhead gas purchase contract may have been agreed upon, the parties were involved in an ongoing negotiation process regarding many essential terms of the contract and no finalized agreement was ever reached. At the January 25, 1990 hearing on partial summary judgment, Don Lee testified as follows:

Q [By Ms. Ostby] If the parties would have reached an agreement, you were to be the scribner [sic] of that agreement, were you not?

A Yes.

Q Were you ever aware an agreement was reached on all the essential terms of a contract, so you could draft such an agreement?

MR. WARNER: Objection, leading.

THE COURT: It is somewhat, but I'll let him answer.

A On everything?

Q Yes.

A No.

Mr. Lee reaffirmed his belief that there was never any finalized agreement between the parties in his subsequent deposition.

> Q [By Ms. Ostby] This letter [referring to the letter from Mr. Jansky to Keesun dated March 4, 1988] indicates, toward the bottom third of the first page, that there were several things "still pending agreement;" do you see that?
>
> A Yes.
>
> Q That accords with your understanding, doesn't it, that there were still some things that were pending agreement at that time?
>
> A Yes.

In addition, Mr. Jansky's own admissions in his letters to Keesun demonstrate that no finalized contract between the parties existed. In his March 4, 1988 letter to Keesun, Mr. Jansky, on behalf of Ferdig/Somont, stated that:

> Along with the <u>latest version of the proposed gas purchase contract</u> attached herewith, I want to confirm those things Ferdig believes already mutually agreed, which will be incorporated in a side agreement executed concurrently with the gas purchase contract, <u>and those things Ferdig acknowledges as still pending agreement. Those things still pending agreement are summarized in our offer presented below, for you to either accept or reject.</u> [Emphasis added.]

Further, in a letter dated April 25, 1988, to the Montana Power Company with whom Ferdig/Somont had negotiated a delivered gas purchase contract, Mr. Jansky stated: "[W]e do not yet have contracts finalized with Keesun or Berenergy." The date that letter was written, April 25, 1988, was more than six months after the date upon which Ferdig/Somont now claims a contract was formed between the parties.

Mr. Jansky's own statements in his letters to Keesun and

10

Montana Power refute Ferdig/Somont's contention that the correspondence subsequent to the September 16, 1987 letter merely reflected negotiations regarding optional additions to and modifications of a basic agreement between the parties. In our view, they also reflect recognition by Ferdig/Somont that the parties had not yet agreed upon all essential terms of a contract.

Ferdig/Somont also contends that this Court should find the existence of a contract between the parties based on the doctrine of promissory estoppel. The elements of promissory estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance on the promise by the party to whom the promise is made; (3) reasonableness and foreseeability of the reliance; and (4) the party asserting the reliance must be injured by the reliance. Tope v. Taylor (1986), 224 Mont. 131, 136-37, 728 P.2d 789, 793.

With respect to the first element, this Court stated in Keil v. Glacier Park, Inc. (1980), 188 Mont. 455, 462-63, 614 P.2d 502, 506, that promissory estoppel cannot be based on preliminary negotiations or an agreement to negotiate the terms of a contract. In the present case, the evidence before the District Court established nothing more than that the parties had engaged in preliminary negotiations and discussions of the terms of a wellhead gas purchase contract. Mr. Jansky's letters to Keesun reflected that finalization of the terms of a contract would require further negotiations between the parties. This evidence does not constitute the clear and unambiguous promise necessary to satisfy the first element of promissory estoppel.

11

Additionally, Ferdig/Somont cannot establish facts sufficient to show reliance on any alleged promise by Keesun. In making the business decision to install the northern leg of its gas gathering pipeline system, Ferdig/Somont had previously determined that its own well in Section 34 of Township 36 North, Range 4 West, along with another well in that section, justified installation of the pipeline. This decision is reflected in Ferdig/Somont's letters to its lenders during the summer of 1987, prior to the date of the alleged formation of the wellhead gas purchase contract.

Keesun, as the moving party, met its initial burden of showing that no evidence existed to prove the formation of a binding contract between the parties. The burden then shifted to Ferdig/Somont to show facts sufficient to raise a genuine issue. Ferdig/Somont has failed to meet this burden. The District Court correctly determined that the evidence proffered by Ferdig/Somont was insufficient to raise any genuine issue of material fact as to the existence of a gas purchase contract between the parties and, thus, properly granted partial summary judgment on this issue.

Having determined that the record reveals that no valid oral contract existed between the parties, it is unnecessary for us to address Ferdig/Somont's second issue on appeal regarding the applicability of the statute of frauds.

The next issue on appeal is whether the District Court erred by not awarding Ferdig/Somont the remedies of rescission or restitution and return of the parties to the status quo when it granted Keesun quiet title relief. Ferdig/Somont contends that,

12

as consideration for a long-term gas purchase contract with Keesun, it assigned various leasehold acreage interests to Keesun. It argues that to allow Keesun to retain the benefits of the contract in the form of acreage interests assigned to it, without enforcing the contract, results in unjust enrichment. Ferdig/Somont argues that it is entitled to rescission of those assignments, restitution, and the return of the parties to the status quo based on the theories of repudiation or breach of contract and fraud. We disagree.

Mr. Finstad's affidavit and accompanying documents show that the lease assignments were separately executed written contracts for which consideration was received by Ferdig/Somont. For example, with respect to the "Spencer-Lohof" lease assignment in Section 27 of Township 36 North, Range 4 West, Ferdig/Somont retained a 7½% overriding royalty interest.

Mr. Jansky admitted that he considered the assignments to be separate land contracts. When questioned during the January 25, 1990 hearing on partial summary judgment about one of the disputed wells in Section 19 of Township 36 North, Range 3 West, Mr. Jansky testified as follows:

Q     [By Ms. Ostby]  And, it [the Section 19 acreage] was not part of that Contract, was it?

A     No, ma'am.

Q     And, despite the fact that it's not part of the Contract that you're contending was breached, you're claiming ownership?

A     Yes, ma'am.

The record shows that Keesun drilled the well in Section 19

pursuant to a separate, written farmout agreement between Western Natural Gas Company (WNG) and Ferdig/Somont and, in turn, a separate, written assignment to Keesun of Ferdig/Somont's rights under the WNG agreement. Again, Ferdig/Somont retained a 7½% overriding royalty. Nowhere in these documents is there any language suggesting the assignments to be dependent upon some other agreement.

In addition, the record does not reveal any fraud on Keesun's part. There is nothing to indicate that Keesun intended to mislead or deceive Ferdig/Somont by concealing material facts, or that somehow Ferdig/Somont was misled to its detriment. To the contrary, the record clearly establishes that Mr. Jansky was fully aware that negotiations were ongoing. We hold that the District Court did not err in rejecting Ferdig/Somont's claims of rescission and restitution.

Affirmed.

Justice

We concur:

Chief Justice

Justices