CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
¶1 Global Client Solutions appeals from the District Court’s order denying Global’s motion to dismiss and to compel arbitration. We affirm.
¶2 Global presents issues for review which we restate as follows:
Issue 1: Whether the District Court erred in reserving to itself the determination of arbitrability.
Issue 2: Whether the District Court erred in determining that the arbitration provision was unconscionable and therefore not enforceable against Ossello.
BACKGROUND
¶3 In July 2012 Susan Ossello faced more than $40,000 in unsecured debt that she owed to Bank of America, Discover Bank and Citibank. She received an unsolicited mailing from an entity called World Law, advertising that it could provide her with debt relief services. The solicitation represented that World Law would furnish legal counsel concerning her debt issues; that it would negotiate with her creditors for a reduction of her debt; that it would prevent her from going into bankruptcy; and that under its plan she could be debt free in two to four years. Ossello called a phone number provided in the mailing and talked to a sales agent for World Law.[1]
*347 ¶4 Ossello alleges that the agent represented that if she enrolled in the debt reduction program, World Law’s attorneys would represent her and contact her creditors to negotiate reduced settlements of her credit card debts. The agent also told Ossello that these attorneys would represent Ossello if she got sued by a creditor. The agent then sent several form agreements to Ossello by email. She and the agent reviewed the forms over the phone, including a Client Services Agreement on behalf of World Law and a Dedicated Account Agreement on behalf of Global Client Solutions. The agent explained to her how to sign the agreements by entering her name into a box on the computer screen. Ossello electronically signed the agreements.
¶5 Global’s Dedicated Account Agreement (DAA) established a non-interest-bearing account in an undisclosed bank, funded by an automatic monthly withdrawal of $589.29 from Ossello’s existing bank account. The agent represented, and Ossello believed, that Global would use the proceeds in the account to pay her debts as they were negotiated and reduced. In reliance upon the advice of the agent and in a belief that she would benefit from a debt reduction plan, Ossello stopped making payments on her credit card debt. A year later, in September 2013, Discover Bank brought a collection action against her in Montana District Court.
¶6 Ossello contacted World Law or Global about the Discover Bank action. They sent her a form answer denying the material allegations of Discover Bank’s complaint, and directed her to file it pro se. In November 2013 Ossello filed the form answer, which denied that she had ever applied for or received a credit card from Discover Bank; denied that she had any agreement with Discover Bank; and denied that she ever received monthly statements from Discover Bank. Ossello claims that World Law and Global knew that the representations in the answer were not based in fact, and that they never provided her with any material legal services. Ossello contends that World Law and Global never contacted her creditors to obtain any debt reduction for her and that “no payments were ever made to [her] creditors from the Dedicated Account.”
¶7 Ossello obtained an attorney and on June 18, 2014, filed an amended answer to Discover Bank’s complaint, and a third-party complaint against World Law and Global. The complaint alleges that World Law and Global used deceptive and fraudulent representations to solicit her participation in an illegal debt settlement plan. Ossello alleges that World Law and Global misrepresented to her that attorneys were providing her with legal services, and deceptively promised to significantly reduce her debt without ever actually doing *348 so. The counts of the complaint allege claims for violation of the Montana Consumer Debt Management Services Act; violation of the Montana Consumer Protection Act; fraudulent misrepresentation and deceit; negligent misrepresentation; illegality, unconscionability and contract of adhesion; unjust enrichment; unauthorized practice of law; and civil conspiracy.
¶8 World Law failed to appear and defaulted in August 2014. Global, however, filed a motion to compel arbitration and to dismiss the third-party complaint for lack of jurisdiction.
¶9 The Global Dedicated Account Agreement that Ossello received on her computer and signed by email stated that Ossello had “approved certain transactions to be taken in [her] account application.” The DAA gave Global authority to disperse funds from the account based on directions from Ossello or based on instructions from the “Sponsor as defined in [her] account application.” The DAA gave Global the authority to act on the Sponsor’s instructions “without further confirmation” from Ossello. The DAA authorized Global to deduct monthly fees and service charges from Ossello’s money deposited into the account. Global could unilaterally increase those fees and charges “for any increase in the associated costs and expenses.” Global also had the authority to transfer Ossello’s account to another FDIC-insured institution, which was also not otherwise identified.
¶10 Attached to the DAA as Exhibit A was a single-page document entitled Dedicated Account Agreement and Application. That document provides that the “Dedicated Account” is to be administered at a bank selected by Global for the purpose of accumulating funds to “repay [Ossello’s] debts in connection with a debt settlement program ... sponsored by the organization identified below.” That document further provides that only the applicant “(or Authorized Contact, if any) may authorize deposits to and creditor payments from my Dedicated Account.” The “authorized contact” refers to the Sponsor, but the “World Law” entity is not listed in either document or identified as the “Sponsor.” The application form has a line for the “Sponsor’s” Global Account number but it is left blank, and in a box labeled “Sponsor” the term “Company Code” is listed.
¶11 The Global documents authorize “the Sponsor” to direct disbursement of funds from the account. However, nowhere is the Sponsor, the bank holding the account, or the account number identified.
¶12 The application also contains a schedule of fees and charges. That schedule lists an account maintenance fee of $9.45 and a wire deposit fee of $10.00 as the only monthly fees not related to “disbursement *349 services.” Ossello’s complaint alleged that as of June 2014 Global had deducted $12,502.38 from her bank account and deposited the money into the account. She alleged at the time her third-party complaint was filed, that Global had taken $6567.90 from the account in fees but that she had received no debt relief or actual legal services. She also asserted that according to Global, the account then had a remaining balance of $5712.13.
¶13 The DAA also contained a lengthy arbitration clause. The clause requires arbitration of “any controversy, claim or dispute... arising out of or relating to” the Dedicated Account Agreement. The arbitration clause states that it applies to the “breach, termination, enforcement, interpretation or validity [of the Agreement], including the termination of the scope or applicability of this agreement to arbitrate.” It provides that the arbitration would take place either in Oklahoma under the laws of that state, or in the state in which the consumer resides under the laws of that state. It provides that the arbitration would be “administered by the American Arbitration Association (“AAA”) pursuant to its rules and procedures,” before an arbitrator selected by the AAA. It also provides for sharing costs of the arbitration, with the customer’s share being limited to $2000. It explains that binding arbitration means that both parties give up the right to trial by jury, the right to appeal from the ruling in most instances, and the right to conduct extensive discovery.
¶14 The arbitration clause further provides that if a party fails to engage in arbitration, unsuccessfully challenges the award, or fails to comply with the award, the other party is “entitled to costs of suit, including a reasonable attorney’s fee for having to compel arbitration or defend or enforce the award.” Thereby, Global would be entitled to claim from Ossello all its attorney fees in the current case, if it were to prevail.
¶15 Significantly, though the DAA arbitration clause broadly requires both parties to arbitrate “any controversy, claim or dispute ... relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof,” Global reserved to itself in a separate paragraph of the DAA the right to bring “collection actions” in court against Ossello .and require her to pay all costs and attorney fees related thereto. The DAA provides that if Ossello’s bank account had a “negative balance” at any time, and Ossello failed to pay “upon demand,” she was responsible for that deficit and “collection actions may be pursued against you. If any such collection action is undertaken, you agree to pay all court costs and collection fees, including reasonable attorney’s fees to the extent permitted by *350 applicable law.” Therefore, if Ossello’s bank account could not cover Global’s periodic deductions for expenses, Global could sue her in a court of law to collect the deficit, along with its costs and attorney fees.
¶16 The District Court found that Ossello had directly challenged the arbitration clause in the Dedicated Account Agreement by specifically alleging in her third-party complaint that the Agreement was unconscionable and that it wrongfully waived her right to a jury trial.[2] Therefore, the District Court concluded that it had jurisdiction to determine the validity of the arbitration clause. The District Court then determined that under Montana law,[3] a challenged arbitration clause is treated “as a contract on equal footing with other contracts” and that unconscionability may be determined by inquiring whether the contract is one of adhesion and whether the contract unreasonably favors the drafter.
¶17 The District Court held, in part, that the arbitration clause in Global’s contract was unconscionable and therefore unenforceable. The analysis employed by the District Court considered first whether the contract was a contract of adhesion, and secondly whether the contract unreasonably favored the drafter (Global), citing Kelker v. Geneva-Roth Ventures, 2013 MT 62, ¶ 59, 369 Mont. 254, 303 P.3d 777. The District Court summarized the contentions of each side regarding the terms of the arbitration agreement and determined that it was unconscionable. The District Court cited the context in which the agreement was presented to Ossello (in a phone call by a person who provided assurances that “attorneys” were involved or would be involved to handle everything for her); the fact that the entire transaction with the sales person on the phone consumed only about 15 minutes; that Ossello was not told that she had the right to ask for a change in any provision of the agreement; and that she was not told and did not know that she was agreeing to abide by a form of dispute resolution that required her to forego the right to seek relief in court.
¶18 The District Court determined that the Dedicated Account Agreement was a contract of adhesion because it was drafted by the stronger party and Ossello had only the choice of accepting it or *351 rejecting it without specific negotiation. The District Court concluded that the arbitration clause was unconscionable and not enforceable, and it therefore denied Global’s motion to dismiss and motion to compel arbitration. Global appeals.
STANDARD OF REVIEW
¶19 This Court reviews a district court’s decision on a motion to dismiss, de novo. Estate of Big Spring, 2011 MT 109, ¶ 20, 360 Mont. 370, 255 P.3d 121. This Court also reviews de novo a district court’s order concerning a motion to compel arbitration. Kelker, ¶ 9. A motion to dismiss is considered in a light most favorable to the non-moving party and the factual allegations of the non-moving party are taken as true. Kortum-Managhan v. Herbergers, 2009 MT 79, ¶ 12, 349 Mont. 475, 204 P.3d 693.
DISCUSSION
¶20 This case involves the intersection of federal and state laws concerning arbitration. The Federal Arbitration Act governs arbitration issues arising from transactions in interstate commerce. Iwen v. U.S. West Direct, 1999 MT 63, ¶ 23, 293 Mont. 512, 977 P.2d 989. The FAA was enacted in 1925 to quell “widespread judicial hostility to arbitration agreements.” A T & T Mobility v. Concepcion, 563 U.S. 333, 339, 131 S. Ct. 1740, 1745 (2011). A primary purpose of the FAA is to ensure that arbitration agreements exist upon the “equal footing” as all other contractual provisions. Buckeye Check Cashing v. Cardegna, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207 (2006). Under the FAA:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2. The final clause of the statute is often referred to as the “savings clause,” the effect of which is that the FAA “does not require the enforcement of arbitration agreements” that would be subject to “generally applicable [state law] contract defenses such as fraud, duress, or unconscionability.” Mortensen v. Bresnan, 722 F.3d 1151, *352 1158 (9th Cir. 2013). However, an arbitration agreement cannot be invalidated by state law defenses that “apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.” Concepcion, 563 U.S. at 339, 131 S. Ct. at 1746.
¶21 Montana law favors arbitration and the State has adopted the Uniform Arbitration Act, Title 27, chapter 5, MCA. Under Montana law, when parties agree to arbitrate disputes, a district court upon application must order them to proceed to arbitration. Section 27-5-115, MCA. There is a presumption of arbitrability and doubts should be resolved in favor of arbitration. Kalispell Education Assoc. v. Bd. of Trustees, 2011 MT 154, ¶ 18, 361 Mont. 115, 255 P.3d 199.
¶22 The prevailing rule is that whether a particular dispute is subject to arbitration is a threshold issue to be decided by the courts unless the parties explicitly agree to assign that issue itself to arbitration. Bridge Fund Capital v. Fastbucks, 622 F.3d 996, 1000 (9th Cir. 2010). Where a party specifically challenges the validity of the arbitration clause, and not just the entire contract that contains it, then it is the court that determines the validity of the arbitration clause. Buckeye, 546 U.S. at 444, 126 S. Ct. at 2775.
¶23 The initial inquiry when any court is asked to compel arbitration is whether the parties have agreed to arbitrate. Kalispell Education Assoc., ¶ 11. It is a “fundamental principle that arbitration is a matter of contract.” Concepcion, 563 U.S. at 339, 131 S. Ct. at 1746, (citing Rent-A-Center v. Jackson, 561 U.S. 63, 130 S. Ct. 2772 (2010)). An enforceable agreement to arbitrate must therefore have the same elements as any contract: namely, identifiable parties with the capacity to contract; the consent of the parties; a lawful object; and consideration. Section 28-2-102, MCA; Thornton v. Songstad, 263 Mont. 390, 394, 868 P.2d 633, 635 (1994). The consent of the parties requires that there be “mutual assent or a meeting of the minds on all essential terms to form a binding contract.” Keesun Partners v. Ferdig Oil Co., 249 Mont. 331, 337, 816 P.2d 417, 421 (1991).
¶24 With these general principles of arbitration and contract law as a backdrop, we now turn to the issues before the Court.
¶25 Issue 1: Whether the District Court erred in reserving to itself the determination of arbitrability.
¶26 Global raises several arguments in support of its contention that the District Court did not have the authority to determine whether the present dispute was arbitrable. First, Global maintains that Ossello’s claims must go directly to arbitration because she did not specifically challenge the validity of the arbitration clause as required by Buckeye. *353 However, Global also concedes that Ossello challenged the arbitration clause in response to Global’s motion to compel arbitration. This was sufficient to meet Ossello’s obligation to challenge the arbitration clause. Bridge Fund Capital, 622 F.3d at 999.
¶27 Second, Global argues that its arbitration provision contains a “delegation term” that requires an arbitrator and not a court to decide any threshold issues of arbitrability. We begin with the fundamental principle under the FAA that it is the responsibility of the court and not the arbitrator to determine the threshold issue of arbitrability — i.e., the validity of a challenged arbitration clause. Kelker, ¶ 12; Buckeye, 546 U.S. at 444, 126 S. Ct. at 2775. However, the parties to an agreement to arbitrate may agree to a “delegation provision” that assigns to the arbitrator the determination of the initial issues of arbitrability. Rent-A-Center, 561 U.S. at 68, 130 S. Ct. at 2777. The Supreme Court has held that the terms of an enforceable delegation provision must be “clear and unmistakable” on the face of the arbitration agreement. First Options v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995). “Courts should not assume that the parties agreed to arbitrate arbitrability unless there is ‘clea[r] and unmistakable] evidence that they did so ” Rent-A-Center, 561 U.S. at 68-69, 130 S. Ct. at 2778.
¶28 Global contends that the following language in its arbitration clause constitutes a delegation provision that must be enforced:
In the event of any controversy, claim or dispute between the parties arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, including the termination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration. ... (Emphasis added.)[4]
Global maintains that this provision evidences Ossello’s agreement to arbitrate arbitrability, preempting the rule of Buckeye and Kelker that enforceability of an arbitration provision is for a court to decide. We disagree.
¶29 There is no “clear and unmistakable” agreement in Global’s language or elsewhere in the facts of this case to arbitrate questions of arbitrability. It is black-letter law that contract language should be *354 interpreted most strongly against the party responsible for the language. Section 28-3-206, MCA; West v. Club at Spanish Peaks, 2008 MT 183, ¶ 53, 343 Mont. 434, 186 P.3d 1228. The fact that Global felt compelled to argue in its brief that the word “termination” in its delegation clause should actually be read as “determination” underscores the lack of clarity in this provision. As written, the language is ambiguous and confusing. It does not clearly delegate to the arbitrator the determination of the scope or applicability of the agreement to arbitrate; rather it delegates to the arbitrator the “termination of the scope or applicability of this agreement to arbitrate.” This language, written by Global, makes no sense and we are unable to plainly construe its meaning. The purported delegation provision here therefore falls far short of the required clear and unmistakable standard adopted by the United States Supreme Court. This provision therefore cannot displace the prevailing rule that the validity of the arbitration clause is to be determined by the court. The District Court properly proceeded to determine the enforceability of the arbitration provision.
¶30 Global further argues that Ossello should be precluded from now contesting the enforceability of the delegation clause because she failed to contest it in the District Court. However, at the time that Ossello filed her brief in the District Court in opposition to Global’s motion to compel arbitration, Global had not raised any argument with respect to a delegation provision. To the contrary, Global argued strenuously that the District Court should consider the arbitration requirement on its merits and order Ossello into arbitration. In other words, Global initially argued its position as if there were no delegation provision at issue in the case. It was only after Ossello filed her brief in opposition to Global’s motion to compel arbitration that Global raised the delegation clause argument upon which it now relies. Under these circumstances^ we will not conclude that Ossello waived her right to oppose the delegation clause.
¶31 Global next argues that reference in the arbitration clause to the “American Arbitration Association” constitutes a delegation provision. The arbitration clause in the DAA provides that the arbitration be “administered by the American Arbitration Association (“AAA”) pursuant to its rules and procedures.....” (Emphasis added.) Administration of the conduct of arbitration proceedings pursuant to AAA rules suggests implementation of procedural and logistical rules; it declares nothing concerning delegation. There is no language in the arbitration clause that imposes a clearly-defined and unmistakable agreement to supplant the general rule that courts determine *355 arbitrability.
¶32 Global alternatively argues that it is the “general rule” that incorporation of the AAA rules into an arbitration clause constitutes an agreement to arbitrate arbitrability. We cannot agree. The cases cited by Global almost exclusively involve arbitration disputes between sophisticated parties in commercial settings, not dealings between a debt relief organization and a debt-ridden consumer. See, e.g., Oracle America v. Myriad Group, 724 F.3d 1069 (9th Cir. 2013) (dispute between two computer software companies, in which the Court applied the “general rule” on AAA incorporation but “express[ed] no view as to the effect of incorporating arbitration rules into consumer contracts.”). In the present case, the AAA rules are not part of the record and neither the DAA nor Global’s arguments specify which of the multiple sets of commercial or consumer AAA rules are supposedly incorporated here. We cannot therefore conclude that Global’s mere reference to administering an arbitration pursuant to AAA rules constitutes a substantive agreement with Ossello to forego the general rule that arbitrability is to be decided by the court.
¶33 For the foregoing reasons, we reject Global’s argument that the District Court erred in reserving to itself the determination of whether the DAA was subject to arbitration. We next turn to the merits of the enforceability of the arbitration clause against Ossello.
¶34 Issue 2: Whether the District Court erred in determining that the arbitration provision was unconscionable and therefore not enforceable against Ossello.
¶35 For the reasons set forth below, we conclude that Global’s purported right to compel Ossello to arbitrate fails for the fundamental reason that it is unconscionable under Montana contract law. Under Montana law, a contract provision can be unconscionable and therefore unenforceable if “when considered in its context, [it] is unduly oppressive, unconscionable or against public policy.” Iwen, ¶ 27.[5] Unconscionability in Montana contract law is a concept adapted from the Uniform Commercial Code, and requires a determination that the contractual term is unreasonably favorable to the drafter, and there is no meaningful choice on the part of the other party but to accept the *356 provision.[6] Iwen, ¶ 32 (citing Leibrand v. National Farmers Union, 272 Mont. 1, 898 P.2d 1220 (1995)).
¶36 In Iwen, we addressed whether an arbitration clause contained in a contract for telephone book advertising was binding upon an attorney customer who filed a complaint against U.S. West for damages because his paid advertisement was incomplete and his telephone number and address were missing. Iwen, ¶ 7. The arbitration provision obligated the parties to arbitrate “any controversy or claim arising out of or relating to this agreement, or breach thereof,” but provided that any action by the publisher (U.S. West) for the collection of amounts due under the agreement was exempted from the arbitration obligation. This Court found the arbitration clause unreasonably favorable to the drafter because it required the customer to arbitrate all controversies, but allowed the company to sue in a court of law to collect amounts due under the contract from the consumer. Iwen, ¶ 31. We concluded the arbitration provision lacked mutuality of obligation, was one-sided, and contained terms unreasonably favorable to the drafter. We said:
Certainly, this does not mean arbitration agreements must contain mutual promises that give the parties identical rights and obligations, or that the parties must be bound in the exact same manner. This simply restates the rule of law that disparities in the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter ... that the agreement becomes unconscionable and oppressive.
Iwen, ¶ 32.
¶37 The arbitration provision at issue in this case similarly obligates both parties to arbitrate any controversy or dispute arising out of the DAA, including matters with respect to breach or enforcement of the agreement. See Opinion, ¶ 13. However, a separate provision in the DAA provides that if Ossello’s account has a negative balance at any time, “collection actions may be pursued against you. If any such collection action is undertaken, you agree to pay all court costs and collection fees, including reasonable attorneys fees, to the extent permitted by applicable law.” Thus, as in Iwen, Ossello is obligated to *357 arbitrate all controversies arising from the breach of the DAA, but if Ossello breaches the agreement, Global has the right to sue her in a court of law and to recover damages plus court costs, collection fees, and attorney fees. As we further observed in ¶ 31 of Iwen, as a practical matter, the only reason that U.S. West would seek a remedy against Iwen would be for an unpaid bill, and for that purpose it had free reign to seek a remedy before a court of law, while Iwen would be forced to seek any and all remedies against U.S. West in arbitration. The same is true here. Global is entitled to sue Ossello in a court of law for breach of the agreement, but she cannot sue it for breach of the agreement. In sum, the obligation to arbitrate is one-sided, not mutual.
¶38 We are mindful that Iwen pre-dates Concepcion ecudMortensen. In Concepcion, the Supreme Court concluded that a California state law rule that deemed unconscionable class-action waivers in consumer contracts of adhesion was preempted by the FAA because it “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Concepcion, 563 U.S. at 352, 131 S. Ct. at 1753 (internal citations omitted). In Mortensen, the Ninth Circuit interpreted Concepcion to mean that “[a]ny general state-law contract defense, based in unconscionability or otherwise, that has a disproportionate effect on arbitration is displaced by the FAA.” Mortensen, 722 F.3d at 1159. Based upon Concepcion and Mortensen, Global maintains here that any generally applicable state rule that stands as an obstacle to the objectives of the FAA is preempted by the Act. We do not agree with this broad statement.
¶39 Notably, several state and federal courts since Concepcion have concluded that lack of mutuality of obligation in an arbitration clause remains an appropriate basis for considering the enforceability of an arbitration clause. See Figueroa v. THI of N.M. at Casa Arena Blanca, LLC, 306 P.3d 480 (N.M. App. 2013) (holding that notwithstanding the pronouncements in Concepcion, an arbitration agreement in which the drafter unreasonably reserved to itself the claims it would most likely bring for the courts while subjecting the weaker party to arbitration of all claims, was unenforceable) (cert. denied by THI of New Mexico at Casa Arena Blanca, LLC v. Figueroa, 133 S. Ct. 2736 (2013)); Brewer v. Mo. Title Loans, 364 S.W.3d 486 (Mo. 2012) (concluding inter alia that Concepcion does not bar a finding that an arbitration clause is unenforceable where a title company reserves its right to obtain its primary remedies through the court system, but requires the party with lesser bargaining power to obtain her only meaningful remedy through individual arbitration) (cert. denied by Mo. Title Loans, Inc. v. *358 Brewer, 133 S. Ct. 191 (2012)); Noohi v. Toll Bros., 708 F.3d 599 (4th Cir. 2013) (affirming district court ruling that an arbitration provision was unenforceable for lack mutuality of consideration because it bound only the purchaser to arbitration) (cert. dismissed by Toll Bros. v. Noohi, 134 S. Ct. 48 (2013)); Lou v. MA Labs., Inc., 2013 U.S. Dist. LEXIS 70665 (N.D. Cal. 2013) (concluding that the lack of mutuality in an arbitration provision renders the clause unconscionable and therefore unenforceable). The fact that the United States Supreme Court has denied certiorari in three of the foregoing cases illustrates that Concepcion has not wholly preempted an unconscionability defense premised upon a lack of mutuality of obligation in actions in which an arbitration clause is challenged.
¶40 As noted, the District Court found inter alia that the arbitration clause in Global’s contract was unconscionable because it unfairly favored the drafter. We agree. This is the same conclusion underpinning our analysis in Iwen. We conclude that the District Court’s finding of unfavorable treatment and unconscionability was correct because the arbitration clause lacked mutuality. As was the case in Iwen, Global retained in the DAA important rights not provided to Ossello. Global had the right to sue Ossello in a court of law at any time the Dedicated Account lacked funds to cover Global’s payment demands or withdrawals. Because virtually the only breach of contract with which Global would be concerned would be lack of payment, Global reserved to itself the right to litigate its primary claim while requiring Ossello to arbitrate any and all claims she might have under the DAA. This arbitration provision unreasonably favors Global to the detriment of Ossello and is therefore unconscionable and unenforceable.
¶41 Concepcion and Mortensen cautioned against courts invoking state law defenses to upend an otherwise valid arbitration clause. That is not what has occurred here. This arbitration clause is invalid not due to a disproportionate application of state law, but rather because Global — like the drafters in the cases noted above — chose to compel arbitration for Ossello while reserving to itself the right to pursue its remedies in a court of law. Such one-sided arbitration clauses do not serve the objectives of the FAA.
CONCLUSION
¶42 For the foregoing reasons, we conclude that the District Court did not err in reserving to itself the determination of arbitrability, nor did it err in declaring that the arbitration provision is unconscionable and *359 therefore not enforceable against Ossello.
¶43 Affirmed.
JUSTICES COTTER, WHEAT, SHEA and BAKER concur.

 This is an appeal from the denial of a motion to dismiss, so there is no factual record in this case. The facts in this Opinion are taken primarily from the allegations of Ossello’s complaint and the contents of Global’s Dedicated Account Agreement, attached to Global’s motion to dismiss. Ossello’s third-party complaint alleges that Global and World Law acted in concert and are jointly and severally liable for her claims.

 Global concedes that Ossello properly raised a challenge to the validity of the arbitration clause.

 The arbitration clause in the Dedicated Account Agreement provides that the validity and enforceability of the Agreement and issues of arbitrability may be decided under the law of the consumer’s state of residence.

 In its brief, Global inserts the prefix “de” in front of the italicized “termination” in this language, contending that “determination” was the term intended. There is no “de” in the original language and we decline to allow Global to alter the language that it drafted to suit its purposes on appeal.

 Iwen also considered, alternatively, whether the disputed contract provision was within the reasonable expectations of the party attacking it. Iwen, ¶ 27. We expressly decide the present case without consideration of Ossello’s reasonable expectations as to the DAA with Global. See Mortensen.

 Global concedes that the DAA is a contract of adhesion, although preferring to refer to it as a “standard form contract.” Global contends that the law, evidently the FAA, is intended to protect contracts of adhesion because they are now common and essential to business. Montana law will not find an arbitration clause or any other provision unenforceable simply because it is in a contract of adhesion. Day v. CTA, Inc., 2014 MT 119, ¶ 11, 375 Mont. 79, 324 P.3d 1205 (upholding an arbitration clause in a contract between a property owner and an architectural engineering firm).