DA 23-0652

FILED

08/27/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0652

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 186

DR. KIMBERLY STRABLE,

       Plaintiff and Appellant,

  v.

CARISCH, INC., d/b/a ARBY'S,

       Defendant and Appellee.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDV-2021-866
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Nicholas LeTang, Passamani & LeTang, PLLC, Helena, Montana

      For Appellee:

         Kirk D. Evenson, Amber Henning, Marra, Evenson & Levine, P.C.,
Great Falls, Montana

Submitted on Briefs:  June 12, 2024

Decided:  August 27, 2024

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Plaintiff and Appellant Kimberly Strable (Strable) appeals from the October 4, 2023 Order on Defendant's Motion for Summary Judgment and the accompanying October 18, 2023 Judgment issued by the First Judicial District Court, Lewis and Clark County. The District Court granted summary judgment in favor of Defendant and Appellee Carisch, Inc., d/b/a Arby's (Arby's) on Strable's claims arising out of a failed Montana Human Rights Bureau (HRB) conciliation process regarding Strable's age discrimination claim against Arby's.

¶2 We address the following restated issue on appeal:

*Whether the District Court erred by granting summary judgment to Arby's after determining no enforceable contract existed between the parties.*

¶3 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In August 2020, Strable, who was not yet 18 years old, inquired with Arby's in Great Falls about an open managerial position. Strable alleged Arby's informed her she could not apply to be a manager because she was under 18. Strable thereafter filed an age discrimination claim with the HRB.[1] The HRB issued a reasonable cause determination on April 7, 2021. After the HRB's reasonable cause determination, the parties entered into a conciliation process as set forth in § 49-2-504(2)(c), MCA, and Admin. R. M. 24.8.301 (2008).

---

[1] In total, Strable filed approximately 300 discrimination claims with the HRB, approximately 200 of which were employment-related age discrimination claims.

¶5    Strable's then-attorney, Raph Graybill, and Arby's then-attorney, Thomas Revnew, began negotiations attempting to reach a voluntary resolution agreement. After negotiating, Strable and Arby's reached an agreement in principle on the monetary portion of a conciliation agreement. Revnew sent Graybill an email stating:

> Raph,
>
> We have an agreement to resolve this matter at $25,000, subject to a mutually agreeable settlement agreement. I understand you'll reach out to Ms. Beck. Let me know if you wish to discuss. Thanks.

Graybill then sent an email to Sandra Page, legal secretary at the Office of Administrative Hearings (OAH), informing her of the tentative agreement:

> Dear Sandra –
>
> The parties in Strable v. Arby's have reached an agreement in principle to resolve Charging Party's claims. They are currently in the process of drafting settlement documents. In the interest of judicial economy and in light of tomorrow's deadline to file preliminary pre-hearing statements, the parties jointly request that the Hearing Officer continue that deadline by 30 days to allow the parties time to formalize settlement and move to dismiss Charging Party's claims.
>
> Counsel for Arby's is CC'd on this email.

Page responded:

> Good morning,
>
> Thank you for letting me know. We will dismiss the matter once HRB has approved the settlement and any affirmative relief & closed the case at HRB.

In addition to his email to Page, Graybill emailed HRB conciliator Clarice Beck to inform her:

> Dear Clarice –

3

Strable and Carisch, Inc. (Arby's) have reached an agreement in principle to resolve Strable's claims. We want to be sure that any settlement agreement is mindful of—and resolves—the Bureau's own objectives for equitable relief.

Do you have language to that effect that would resolve any outstanding agency issues, and if so would you be willing to provide it? Or, if I should be reaching out to someone else (*e.g.*, Andria) please let me know.

Thank you for your assistance.

Raph

PS: I have included Tom Revnew, counsel to Carisch, on this email.

Beck responded:

Good morning counsel,

That is good news. I will send a DRAFT Conciliation Agreement for your review and any changes you might have.

Should be able to get that to you no later than tomorrow, hopefully this morning.

Later that morning, Beck emailed a draft conciliation agreement to both Graybill and Revnew:

Good morning,

Attached a Draft Agreement for you to work with.

Let me know if I can do anything else.

The draft conciliation agreement sent by Beck included a blank space for a monetary settlement amount between the parties and contained affirmative relief provisions for Arby's, including removing language pertaining to age requirements from job postings, a requirement to conduct employee training on discrimination, posting a non-discrimination

4

poster in a conspicuous place in the work area, and requiring Arby's to conduct its business in a way that neither discriminates nor retaliates against any person for opposing discriminatory practices.

¶6     The parties did not finalize or sign the draft agreement before Graybill withdrew as Strable's counsel.  Strable thereafter sought to finalize settlement with Revnew acting pro se.  She emailed him directly:

> Good morning!  As I'm sure you know Mr. Graybill no longer represents me. I am reaching out to see if your client still intends on settling this case and if so can you please send me the documents?

After Revnew did not reply, Strable again emailed him:

> Good evening.  I am just checking in to see if Arbys still intends on settling this case?  If so can you please send me the documents so we can get this finalized?

Strable also repeatedly contacted HRB conciliator Beck, who then emailed Revnew:

> Good morning Tom,
>
> I have had a number of emails and a phone call from Ms. Strable asking about your client.  She seems to think that the case may be settled.
>
> I have not received any information regarding a settlement and as you know if there is a settlement the Bureau must be involved for the targeted equitable relief aspect.
>
> If it is not settled then the venue at the Office of Administrative Hearings is where the parties should be and I will let her know that again.
>
> Thank you for your help.

On August 7, 2021, Strable emailed both Beck and Revnew:

> Good afternoon.  I have tried to reach out to Arby's multiple times regarding the settlement we came to.  However I still have not heard back.  Can you please see where they are at and if I can get a copy of the draft agreement?

On August 9, Beck responded:

> You are using the same address I have for Respondent, so If Mr. Revnew wants to respond on behalf of his client we both should receive that email. If not the parties are in the proper venue.

On August 16, Revnew responded:

> Ms. Strable,
>
> Thank you for your e-mails and voice-mail messages. Until Mr. Graybill's motion to withdraw was approved on July 30, 2021, I was ethically prohibited from talking to you. After his motion to withdraw was approved, I have either been out of the office or dealing with some time-consuming and pressing litigation matters. Regardless, I needed to and have since reviewed the status of this matter with my client. As you know, the parties never passed draft settlement agreements to each other nor did they ever discuss with the Human Rights Bureau what the Bureau would require for affirmative relief in order for there to be a settlement. In fact, as I believe Ms. Beck has indicated, she has not seen any draft settlement agreement from the parties. Without any agreement between the parties and the Bureau as to the affirmative relief requirements, there can be no meeting of the minds or settlement agreement. For the time-being, given the facts and circumstances involved with your alleged claims, my client has decided to defend itself in the litigation before the Office of Administrative Hearings rather than resolve this matter. Feel free to Call me if you wish. Thanks.

¶7 On August 30, 2021, Strable filed Plaintiff's First Amended Complaint and Request for Stay of Administrative Proceedings, Attorney's Fees in the District Court.[2] Strable set forth claims for breach of contract, bad faith, and equitable estoppel arising from Arby's denial a settlement agreement existed. Arby's moved to dismiss the matter for lack of subject matter jurisdiction pursuant to M. R. Civ. P. 12(b)(1), which, after full briefing by

---

[2] Strable's initial Complaint was filed on August 23, 2021.

the parties, was denied by the District Court on May 24, 2022. Arby's thereafter filed its Answer to the First Amended Complaint on June 8, 2022.

¶8 Arby's filed a motion for summary judgment on March 17, 2023, asserting no enforceable contract existed between Strable and Arby's as a matter of law. The parties fully briefed the motion and neither requested oral argument. The District Court granted Arby's motion for summary judgment on all claims in its October 4, 2023 Order on Defendant's Motion for Summary Judgment. The court recognized the negotiations between the parties were taking place during an ongoing HRB case and found the contractual element of consent was not met because Arby's "had not yet had affirmative relief provisions imposed on them, and therefore could not consent to perform conditions of which they had not yet been made aware." Strable appeals.

## STANDARD OF REVIEW

¶9 We review a district court's grant or denial of summary judgment de novo, applying the same criteria as M. R. Civ. P. 56. *TCF Enters., Inc. v. Rames, Inc.*, 2024 MT 38, ¶ 14, 415 Mont. 306, 544 P.3d 206 (citing *Hudson v. Irwin*, 2018 MT 8, ¶ 12, 390 Mont. 138, 408 P.3d 1283). Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Hudson*, ¶ 12.

**DISCUSSION**

¶10    *Whether the District Court erred by granting summary judgment to Arby's after determining no enforceable contract existed between the parties.*

¶11    Strable asserts the District Court erred by granting summary judgment to Arby's because each element required to create a binding contract was present. Arby's contends the HRB's affirmative relief provisions were essential elements of a settlement agreement undertaken during the HRB conciliation process.

¶12    "Settlement agreements are contracts, and are subject to the provisions of contract law." *Murphy v. Home Depot*, 2012 MT 23, ¶ 8, 364 Mont. 27, 270 P.3d 72 (citing *Dambrowski v. Champion Int'l Corp.*, 2003 MT 233, ¶ 9, 317 Mont. 218, 76 P.3d 1080). All contracts must contain four essential elements: (1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) consideration. Section 28-2-102, MCA. A settlement agreement is binding if it is made by an unconditional offer and accepted unconditionally. *Murphy*, ¶ 8 (citing *Hetherington v. Ford Motor Co.*, 257 Mont. 395, 399, 849 P.2d 1039, 1042 (1993)).

¶13    Here, the parties were negotiating a settlement agreement in the context of an ongoing discrimination case pending before the HRB. In the case, the HRB had already issued a reasonable cause finding, determining Arby's had likely engaged in unlawful discrimination against Strable, before the negotiations at issue here took place during the conciliation process. *See* Admin. R. M. 24.8.301(1) (2008) ("Any voluntary resolution agreed to after the Human Rights Bureau issues a reasonable cause finding is referred to as a conciliation agreement."). While in the conciliation process, any voluntary agreement

8

reached by the parties is subject to the provisions of the voluntary resolution agreement administrative rule, Admin. R. M. 24.8.301(2) (2008), and the HRB "may require affirmative relief provisions to eliminate the discriminatory practice confirmed in the informal investigation." Admin. R. M. 24.8.301(3) (2008). The rule requires that any "voluntary resolution agreement reached by the parties must be in writing, signed by the parties, and approved by the Human Rights Bureau." Admin. R. M. 24.8.301(5) (2008). It additionally states:

> The Human Rights Bureau may refuse to approve a voluntary resolution agreement which does not resolve all allegations or remedies for all persons or groups affected by the alleged discrimination. Alternatively, the Human Rights Bureau may treat a voluntary resolution agreement which does not resolve all allegations or remedies for all persons or groups affected by the alleged discrimination as a withdrawal in accordance with ARM 24.8.401, and may initiate the complaint as a commissioner complaint for further proceedings.

Admin. R. M. 24.8.301(8) (2008).

¶14    On appeal, Strable frames the issue in terms of a single element being negotiated between the parties—that she "would dismiss her discrimination action in exchange for $25,000"—but neglects the important fact, recognized by the District Court, that the parties were negotiating in the context of the HRB conciliation process. In accordance with that process, the parties made a preliminary agreement on an essential term—Arby's paying Strable—but not all essential terms. The essential terms of any voluntary resolution agreement entered into during the conciliation process involve those affirmative relief provisions to eliminate discriminatory practices which "resolve all allegations or remedies for all persons or groups affected by the alleged discrimination," and the HRB may reject

9

any agreement which does not satisfy the HRB's objectives of equitable relief. Admin. R. M. 24.8.301(3), (8) (2008). The parties were certainly cognizant of the affirmative relief requirements imposed by the conciliation process during their negotiations. Counsel for Arby's noted their agreement was "subject to a mutually agreeable settlement agreement," and he understood Strable's counsel would "reach out to Ms. Beck," the HRB conciliator. After reaching the "agreement in principle" regarding Arby's payment to Strable, Strable's counsel wrote to Beck informing her that the parties "want to be sure that any settlement agreement is mindful of—and resolves—the Bureau's own objectives for equitable relief" and sought to obtain language from the HRB "that would resolve any outstanding agency issues[.]" In response, the parties received a draft conciliation agreement which imposed various obligations on Arby's. The parties never signed this agreement and the HRB did not "inform the parties in writing that the conciliation period [was] concluded," Admin. R. M. 24.8.301(3) (2008), prior to Strable voluntarily dismissing her claim on February 10, 2022.

¶15    "To form a binding contract, there must be mutual consent on all essential terms." *Murphy*, ¶ 8 (citing *Kortum-Managhan v. Herbergers NBGL*, 2009 MT 79, ¶ 18, 349 Mont. 475, 204 P.3d 693). "Consent is not mutual unless the parties all agree upon the same thing in the same sense[.]" *Murphy*, ¶ 8 (quoting § 28-2-303, MCA). "[A] party is bound if he or she unconditionally consented to the agreement." *Murphy*, ¶ 8 (citing *Lockhead v. Weinstein*, 2003 MT 360, ¶ 7, 319 Mont. 62, 81 P.3d 1284).

¶16    The District Court held the essential element of consent was lacking in this case. We agree. "There must be mutual assent or a meeting of the minds *on all essential terms*

to form a binding contract." *Keesun Partners v. Ferdig Oil Co.*, 249 Mont. 331, 337, 816 P.2d 417, 421 (1991) (citing *Chadwick v. Giberson*, 190 Mont. 88, 92, 618 P.2d 1213, 1215 (1980)) (emphasis added). While Strable now asserts the only essential term to any conciliation agreement was how much money Arby's would pay her to dismiss her claim, this argument is unpersuasive when applied to the conciliation process. At that point, after the HRB issued its reasonable cause finding, Arby's could not simply pay Strable to make the complaint go away, because a conciliation agreement which did not address the HRB's equitable relief objectives could either be outright rejected by the HRB or treated as a withdrawal and re-initiated as a commissioner complaint. Admin. R. M. 24.8.301(8) (2008). A conciliation agreement would also need to be "in writing, signed by the parties, and approved by the Human Rights Bureau." Admin. R. M. 24.8.301(5) (2008).

¶17 The affirmative relief provisions were essential terms to any settlement agreement under the circumstances at issue here and Arby's was entirely unaware of what they may be when reaching the "agreement in principle" regarding the payment term. So while Strable was understandably more focused on what payment she would receive when reaching a conciliation agreement, Arby's also needed to understand what affirmative relief provisions it would be agreeing to in said conciliation agreement before the parties could "agree upon the same thing in the same sense[.]" Section 28-2-303, MCA. The record does not reflect that the parties reached mutual agreement on all essential terms of the conciliation agreement because "the parties did not agree on the same thing in the same sense." *Murphy*, ¶ 9. Accordingly, the District Court correctly found the essential contractual element of consent was not met in this case and properly granted summary

11

judgment in favor of Arby's. In addition, because the essential elements of a contract were not met, we need not address Strable's arguments regarding conditions precedent to contract formation.

**CONCLUSION**

¶18 The District Court correctly granted summary judgment to Arby's because no enforceable contract between the parties existed.

¶19 Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE