FILED

12/22/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0727

DA 19-0727

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 319

FARMERS INSURANCE EXCHANGE,

      Petitioner, Appellee, and Cross-Appellant,

    v.

KATE WESSEL, JOHN MEHAN,

      Respondents, Appellants, and Cross-Appellees,

MARC FLORA, GLORIA FLORA and CONNIE CRITES,
as Personal Representative of the Estate of
John Michael Crites,

      Respondents.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis And Clark, Cause No. BDV 19-333
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          David L. Vicevich, Lawrence E. Henke, Vicevich Law, Butte, Montana

      For Appellee:

          Nicholas J. Pagnotta, Alexander Tsomaya, Williams Law Firm, P.C.,
Missoula, Montana

          Submitted on Briefs:  September 30, 2020

                  Decided:  December 22, 2020

Filed:

_____
             Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 This case has its origins in two lawsuits involving neighboring landowners in a rural part of Lewis and Clark County. One claim was filed by Marc and Gloria Flora (the Floras) and the other by the Estate of John Michael Crites (the Estate). Defendants in these underlying lawsuits, Katy Wessel and John Mehan (together, the Insureds), tendered the claims to Farmers Insurance Exchange (Farmers), with whom they have a homeowners insurance policy (Policy). Farmers concluded coverage was not available because the claims asserted intentional conduct by the Insureds. Farmers continued with its defense of the Insureds and filed the instant declaratory judgment action to confirm it did not have a duty to defend or indemnify the Insureds. The First Judicial District Court, Lewis and Clark County, granted summary judgment to Farmers, concluding there was no coverage under the Policy and Farmers, therefore, did not have a duty to defend the Insureds. However, the District Court determined the issue of indemnification was not justiciable and, on that basis, denied Farmers' motion to dismiss. Also, citing M. R. Civ. P. 56(f), the District Court denied the Insureds' request to conduct further discovery, concluding no affidavit had been filed showing "specific reasons" why the Insureds could not present essential facts in opposition to Farmers' summary judgment motion. Both parties appeal.

¶2 The Insureds present the following issues for review:

1. *Whether Farmers had a duty to defend when the claim against the Insureds alleges intentional conduct?*

2. *Whether the District Court abused its discretion when it denied the Insureds' discovery requests?*

2

Farmers presents the following issue on cross-appeal:

*3. Whether there can be a duty to indemnify in the absence of a duty to defend?*

We affirm the District Court's denial of the Insureds' discovery requests. We affirm the District Court's holding that Farmers had no duty to defend the Insureds. However, when there is no duty to defend there cannot be a duty to indemnify. Consequently, we reverse the District Court's holding that the duty to indemnify was not justiciable.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In 2008, the Insureds purchased property in Lewis and Clark County which is accessed by Turk Road. At the time, neighboring landowners, the Floras and Michael Crites, used Turk Road to access their homes located further north. Turk Road, which traverses the Insureds' property, was the only means of access to the Floras' and Michael Crites' properties. Both the Floras and the Estate maintain they have a right to use Turk Road as it traverses the Insureds' property and that Turk Road has historically provided the only means of access to their properties.

¶4 In 2008, the Insureds asked for permission to snowmobile, and otherwise recreate, on the Floras' property. The Floras were unable to grant them permission because the property is in a conservation easement which prohibits motorized use. The Insureds became upset and retaliated by not allowing the Floras and Michael Crites to use Turk Road. The Floras and the Estate allege that the Insureds began a concerted campaign to intimidate and harass them and others who needed to use Turk Road to access their properties. As a result, the Floras purchased, from another landowner, an easement on

3

property adjoining the Insureds' property and constructed a new driveway which did not traverse the Insureds' property, and which could also be used by Michael Crites.

¶5      This did not resolve the ongoing dispute. John Mehan allegedly told Mrs. Flora that "if the Floras continued to use their new driveway, Marc Flora's blood would run down it."[1] Threats were also allegedly made by the Insureds that if Crites bypassed the Insureds' parcel by using the new driveway, it would "be the end of him, too." The Floras allege that, in retaliation for not allowing the Insureds to recreate on their property, the Insureds constructed snow berms and gates, felled trees, and created other obstacles to prevent them and others from using the new driveway to access their properties. Additionally, the Floras allege the Insureds physically threatened them; interfered with the enjoyment of their property and home; and intimidated them, including discharging firearms at them. The Floras allege they were compelled to leave their home, upon advice of law enforcement, and because they feared for their lives. The Floras have been unable to find anyone to live in their home, even for free; and their home continues to sit vacant, to decay, and cannot be sold.

¶6      In the summer of 2011, Michael Crites disappeared. His dismembered remains were found several months later near McDonald Pass. Michael Crites' skull was subsequently discovered in a different location from the rest of his body, on the other side of the Continental Divide. Mehan was charged with felony assault with a weapon for pointing a

---

[1] The Insureds contend that Katy Wessel never made threats or intimidated and harassed the Floras, the Estate or others. However, as will be discussed infra, the conduct which gave rise to the claim was intentional and not accidental. Therefore, it is of little consequence whether Katy Wessel participated in the alleged intentional conduct of assault and intimidation.

4

gun at Crites, and for felony evidence tampering for removing cameras that were being used by law enforcement to investigate Crites' murder. Law enforcement has searched the Insureds' home on several occasions.

¶7     The Floras filed a lawsuit against the Insureds seeking declaratory and injunctive relief alleging that they have an express and/or prescriptive easement to use Turk Road; and sought relief for assault, trespass, and civil conspiracy. They allege the Insureds acted intentionally, purposefully, and with malice. The second claim against the Insureds was brought by the Estate and, like the Flora case, alleged that Crites had a right to use Turk Road and that the Insureds had threatened Crites in retaliation for the Insureds' inability to recreate on the Floras' property. The Estate brought claims against the Insureds for assault, trespass, intentional infliction of emotional distress, and civil conspiracy. The Estate claims these acts were intentional and purposeful.

¶8     Farmers argues that the claims, made by the Estate and the Floras against the Insureds, do not constitute an "occurrence" which would trigger coverage under the terms of the Policy. Farmers maintains there was nothing "accidental" about the Insureds' conduct which could be construed as an "occurrence" under the Policy. Contrarily, the Insureds maintain that there are disputes of fact over whether they committed any wrongful or intentional acts which would exclude them from coverage under the Policy. The Insureds argue that a factual issue exists over whether an "occurrence" is involved in this dispute, thus triggering coverage. Finally, the Insureds argue more discovery is needed to know the basis of Farmers' decision to deny coverage.

¶9     Relevant portions of the Policy provide that "Farmers will defend an insured against any suit seeking damages covered under Coverage E (Personal Liability)." Coverage E provides that Farmers will pay "those damages which an insured becomes legally obligated to pay because of: 1. Bodily injury resulting from an occurrence; or 2. Property damage resulting from an occurrence." Under the Policy, "occurrence" is clearly defined: "occurrence . . . means an *accident*[.]" (Emphasis added.) The Policy further provides for a number of exclusions for intentional torts:[2]

> 12.  Intentional acts.
> We do not cover bodily injury, property damage or personal injury which is caused by, arises out of or is the result of an intentional act by or at the direction of any insured. By way of example this includes but is not limited to any intentional act or intentional failure to act by any insured, whether a criminal act or otherwise, where resulting injury or damage would be objectively expected to a high degree of likelihood, even if not subjectively intended or expected. This exclusion applies even if:
>
>> a. any insured mistakenly believes he or she has the right to engage in certain conduct;
>> b. the injury or damage is sustained by persons or property not intended or expected by any insured;
>> c. the injury or damage is different or greater or of a different quality than that intended or expected;
>> d. any insured did not understand that injury or damage may result; or
>> e. any insured knew the intentional act or failure to act was a violation of any penal law, whether or not an insured is actually charged with or convicted of a crime.
>
> For purposes of application of this exclusion, a plea of guilty, no contest, or true in a criminal proceeding, which involves the same acts or activities which are the basis of a claim for damages against any insured, shall

---

[2] We note these exclusions only for purposes of completeness and because it discusses "intentional torts," which are at issue in the underlying proceedings. However, because we conclude there was no "occurrence" and the claims do not trigger coverage, it is not necessary to apply the Policy's provision to exclude coverage.

6

conclusively bar any bodily injury, property damage or personal injury arising or resulting from or caused by such acts or activities from.

¶10 Farmers moved for summary judgment in September 2019 after receiving answers from the Floras and the Estate admitting that their allegations against the Insureds were for "strictly intentional conduct." The District Court granted Farmers' motion for summary judgment on the duty to defend; however, it concluded Farmers' duty to indemnify was not yet justiciable.

## STANDARDS OF REVIEW

¶11 This Court will review an order granting summary judgment de novo. M. R. Civ. P. 56(c)(3), provides: "the judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party has the initial burden of establishing both the absence of any genuine issue as to any material fact and entitlement to judgment as a matter of law. *Tin Cup Cty. Water v. Garden City Plumbing*, 2008 MT 434, ¶ 22, 347 Mont. 468, 200 P.3d 60. Once the moving party has met its burden, the opposing party must present affidavits or other testimony containing material facts which raise a genuine issue as to one or more elements of its case. *Tin Cup Cty. Water*, ¶ 54 (citing *Klock v. Town of Cascade*, 284 Mont. 167, 174, 943 P.2d 1262, 1266 (1997)).

¶12 Before this Court is an issue regarding the interpretation of an insurance policy. The interpretation of an insurance policy presents a question of law, which this Court reviews

7

for correctness. *Town of Geraldine v. Mont. Mun. Ins. Auth.*, 2008 MT 411, ¶ 8, 347 Mont. 267, 198 P.3d 796.

**DISCUSSION**

¶13 *1. Whether Farmers had a duty to defend when the claim against the Insureds alleges intentional conduct?*

¶14 An insurer has a duty to defend when a complaint against an insured alleges facts which, if proved, would result in coverage. *Fire Ins. Exch. v. Weitzel*, 2016 MT 113, ¶ 12, 383 Mont. 364, 371 P.3d 457 (internal citations omitted). Whether a duty exists is determined by looking to the allegations within the complaint; "the complaint and the policy constitute the universe with regard to the insurers' duty to defend." *Weitzel*, ¶ 12. If there is no coverage under the terms of the policy based on the facts contained in the complaint, there is no duty to defend. *Weitzel*, ¶ 12 (internal citations omitted). The insured bears the initial burden "to establish that the claim falls within the basic scope of coverage." *Weitzel*, ¶ 13 (citing *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50, ¶ 29, 326 Mont. 174, 108 P.3d 469). If the insured shows that the claim falls within the basic scope of coverage, then the burden shifts to the insurer to show that the claim is unequivocally excluded under an exception within the coverage. *Weitzel*, ¶ 13.

¶15 Here, the Insureds must demonstrate that the claims against them fell within the scope of coverage, showing either "bodily injury" or "property damage" resulting from an "occurrence." Under the Policy, "occurrence" means accident. To analyze whether the conduct was accidental rather than intentional, the District Court utilized the *Fisher Builders* two-prong objective standard, which first considers whether the act itself

8

was intentional and, if so, then considers whether the consequence or resulting harm stemming from the act was intended or expected from the actor's standpoint. *See Emplrs Mut. Cas. Co. v. Fisher Builders, Inc.*, 2016 MT 91, ¶ 15, 383 Mont. 187, 371 P.3d 375. The second prong requires an objective inquiry to determine what could reasonably be expected to result from an intentional act. *Fisher Builders*, ¶ 19. The District Court found both the Floras and the Estate alleged, in their underlying claims and respective admissions in this action, intentional conduct of the Insureds that was not accidental. The District Court found that the Insureds also intended the ensuing consequences of harm to the Floras and the Estate.

¶16   This Court agrees. The Floras and the Estate allege that the Insureds' conduct was both intentional and purposeful; that is, the Insureds intended to cause the "very type of damages" that the Floras and the Estate suffered. The intentional conduct alleged in the claims by the Floras and the Estate include: threats of physical harm for using the Floras' new driveway; installment of physical barriers preventing access to properties owned by the Floras, the Estate, and other landowners; retaliation in the form of intimidation for denying the Insureds access to recreate on their property; and threats of violence through the use of firearms. As the conduct alleged was both intentional and done purposefully by the Insureds to cause injury and damages to the Floras and the Estate, it does not come under the terms of the Policy which requires that an "occurrence" or "accident" is needed to trigger coverage. Although an insurer "[c]annot ignore knowledge of facts that may give rise to coverage under the policy simply because the complaint . . . does not allege these facts of which the insurer has knowledge . . . ," this exception does not apply due to the

9

very nature of the claims. *See Revelation Indus. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 123, ¶ 39, 350 Mont. 184, 206 P.3d 919. The Insureds suggest that their denials to the allegations create factual disputes. However, our case law makes clear that the threshold question is whether the claim against the insured alleges facts that would trigger coverage. *Weitzel*, ¶ 21. The Insureds cannot create coverage where it does not exist simply by denying the claims when the claims themselves do not trigger coverage.

¶17 The District Court did not err in granting summary judgment to Farmers on the issue of Farmers' duty to defend. The underlying cases against the Insureds allege the Insureds intended both their actions and the ensuing consequences. Because the Insureds' conduct was not accidental, there was no "occurrence" under the Policy which would trigger coverage.

¶18 *2. Whether the District Court abused its discretion when it denied the Insureds' discovery requests?*

¶19 The Insureds assert that they were entitled to conduct reasonable discovery to evaluate Farmers' compliance with Montana law in its claims settlement process. Pursuant to Montana law, Farmers only had to read the underlying complaint and counterclaim. *See Landa v. Assurance Co.*, 2013 MT 217, ¶ 34, 371 Mont. 202, 307 P.3d 284 (holding that Montana law "expressly decline[s] to require that insurers seek out facts beyond the complaint."). M. R. Civ. P. 56(f) requires, "the party opposing the motion show by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition[.]" If Rule 56(f) is not met, then the party opposing summary judgment is not entitled to discovery. *Miller v. Goetz*, 2014 MT 150, ¶¶ 14-16, 375 Mont. 281,

10

327 P.3d 483. Additionally, "a district court does not abuse its discretion in denying a M. R. Civ. P. 56(f) motion where the party opposing a motion for summary judgment does not establish how the proposed discovery could preclude summary judgment." *Miller*, ¶ 15.

¶20 The Insureds have not provided an affidavit setting forth specific reasons why they cannot present facts essential to justify their opposition to Farmers' summary judgment motion. Instead, the Insureds merely deny the allegations against them. As the Insureds have not satisfied Rule 56(f), this Court agrees with the District Court's decision to deny discovery under a plain application of Rule 56(f)—and in doing so, the District Court did not abuse its discretion.

¶21 Farmers asserts the following claim on cross-appeal.

¶22 *3. Whether there can be a duty to indemnify in the absence of a duty to defend?*

¶23 The duty to defend and the duty to indemnify are independent of each other, however, "where there is no duty to defend, it follows that there can be no duty to indemnify." *See Skinner v. Allstate Ins. Co.*, 2005 MT 323, ¶ 18, 329 Mont. 511, 127 P.3d 359. The duty to indemnify is narrower than the duty to defend and arises "only if coverage under the policy is actually established." *State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶ 26, 372 Mont. 191, 312 P.3d 403. "While an insurer's duty to defend is triggered by the allegations [of the claim], an insurer's duty to indemnify hinges not on the facts the claimant alleges and hopes to prove but instead on the facts, proven, stipulated, or otherwise established that actually create the insured's liability." *Freyer*, ¶ 26.

11

¶24 The District Court held Farmers' duty to indemnify was not ripe and therefore not justiciable because liability had not yet been determined in the underlying claims made by the Floras and the Estate. The District Court cited *Northfield* stating, "it simply is not appropriate to determine whether the conduct of the insureds in the present case falls within the exclusions of the Policy prior to a determination or stipulation as to the underlying facts, because the duty to indemnify may, in fact, never arise." *Northfield Ins. Co. v. Mont. Ass'n of Counties*, 2000 MT 256, ¶ 23, 301 Mont. 472, 10 P.3d 813. The District Court was correct that where there may *potentially* be a duty to defend, the duty to indemnify is not ripe for judicial determination. However, here, there is no coverage under the Policy which gives rise to a duty to defend. Where there is no coverage under the Policy—and no corresponding duty to defend—there cannot be a duty to indemnify. A conclusion that there is no duty to defend compels the conclusion that there is no duty to indemnify.

**CONCLUSION**

¶25 The District Court correctly concluded there was no coverage under the Policy because the Insureds' intentional acts committed with the purpose of producing the ensuing consequences did not constitute an "accident" or "occurrence." The District Court did not abuse its discretion in denying the Insureds more time for discovery, particularly given that the Insureds did not comply with M. R. Civ. P. 56(f). The District Court erred in concluding the issue of whether Farmers had a duty to indemnify was not justiciable. A conclusion that there is no duty to defend, as here, compels a conclusion that there is no

duty to indemnify. The judgment of the District Court is affirmed in part and reversed in part.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON