FILED

02/27/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0731

DA 22-0731

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 38

TCF ENTERPRISES, INC., d/b/a MALMQUIST
CONSTRUCTION and CINCINNATI
INSURANCE COMPANY,

      Plaintiffs and Appellees,

    v.

RAMES, INC., formerly d/b/a CENTRAL
INSURANCE AGENCY,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV-2020-521
                    Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Brooke B. Murphy, MurphyMyers PLLC, Billings, Montana

          Jesse Beaudette, Boyher, Erickson, Beaudette & Tranel, P.C., Missoula,
          Montana

      For Appellees:

          Todd A. Hammer, Marcel A. Quinn, Hammer, Quinn & Shaw PLLC,
          Kalispell, Montana

                        Submitted on Briefs:  October 18, 2023
                                  Decided:  February 27, 2024

Filed:

_____
                          Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Defendant and Appellant Rames, Inc. formerly d/b/a Central Insurance Agency (Rames), appeals from the February 28, 2022 Orders Re[:] Summary Judgment and the November 22, 2022 Final Judgment issued by the Eleventh Judicial District Court, Flathead County. The District Court's summary judgment order granted summary judgment to Plaintiffs and Appellees TCF Enterprises, Inc. d/b/a Malmquist Construction (Malmquist) and Cincinnati Insurance Company on the issue of liability and denied Rames's competing summary judgment motion regarding the duty of care and a professional services exclusion. Following a September 6-8, 2022 trial, a jury awarded damages to Malmquist in the amount of $1,022,257.85.

¶2 We address the following restated issues on appeal:

*1. Whether the District Court erred by granting Malmquist's motion for summary judgment regarding liability.*

*2. Whether the District Court erred by denying Rames's motion for summary judgment and determining the policy's professional services exclusion would not have barred coverage for defense and indemnity.*

*3. Whether the District Court abused its discretion by precluding certain evidence at trial.*

*4. Whether the District Court abused its discretion in instructing the jury.*

¶3 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Malmquist is a general contractor located in Whitefish. In 2017, Malmquist was the general contractor on the construction of a condominium building located at 139 East Second Street in Whitefish (the 139 Project), as well as a residential project known as the

2

Solem Project. As part of both projects, Malmquist contacted C&H Engineering and Surveying, Inc. (C&H). Malmquist requested prices from C&H for surveying costs, and, for the 139 Project, the separate cost for a "geo-tech report[.]"

¶5 As a general contractor, Malmquist typically uses several subcontractors on each project. The first time a subcontractor contracts to work on a project for Malmquist, Malmquist sends them a new vendor packet. Malmquist's new vendor packet lists requirements a subcontractor must complete prior to beginning work, including reviewing invoicing/payment guidelines, filling out and returning a subcontractor profile and W-9 form, and providing workers compensation and general liability insurance certificates. Malmquist's new vendor packet notes that "[a]ll information and insurance must be in our office before work can begin." As relevant here, the packet includes a sample certificate of liability insurance which contains the following required language:

> TCF Enterprises Inc. DBA Malmquist Construction is named as an Additional Insured with respect to General Liability, including Primary/Non-Contributory and Completed Operations coverage, per forms CG2010 0413 and GC2037 0413 or equivalent. Waiver of Subrogation in favor of TCF Enterprises Inc. DBA Malmquist Construction on General Liability.

¶6 C&H received the new vendor packet from Malmquist on June 6, 2017. After receiving the new vendor packet, Sue Hjalmarsson (Hjalmarsson), C&H's office manager, emailed Traci Waddell (Waddell), the office manager of Rames (then known as Central Insurance Agency) that day:

> C&H Engineering certificate of insurance
> Hi Traci,
>
> Can you please send work comp and liability certificates to Malmquist Construction?

3

I attached their sample which shows what they need and also has their address. Please email to admin@malmquist.com

Thank you,

Sue Hjalmarsson
Office Manager

Malmquist's sample certificate of liability insurance from the new vendor packet was attached to Hjalmarsson's email to Waddell. After receiving Hjalmarsson's email, Waddell sent an email to Malmquist, with Hjalmarsson cc'd,

C & H Engineering

See attached GL cert. WC to follow.

Thanks Traci

Waddell's email had a certificate of liability insurance attached, with Malmquist listed as the certificate holder, which contained the following language:

The certificate holder is listed as an additional insured on a primary and noncontributory basis for General Liability per policy for GCD037 04/05, for ongoing and completed operations. Waiver of subrogation for General Liability applies to certificate holder.

In contrast to what was represented on the certificate provided by Waddell, Rames did not actually procure additional insured coverage for Malmquist and did not list Malmquist as an additional insured on C&H's policy through a scheduled endorsement.

¶7     C&H ultimately performed work as a subcontractor to Malmquist on both the 139 Project and the Solem Project. On the 139 Project, C&H was hired to conduct a subsurface soils investigation for the proposed condo building. As reflected in C&H's report to Malmquist, C&H visited the site "to observe the subgrade soils present" and "provide[d]

4

recommendations regarding subgrade improvements for the proposed structure[']s foundation." Though it performed soil testing, the test pits dug by C&H did not go low enough to reach the native soils at the 139 Project site. C&H provided recommendations regarding undocumented fill, subgrade preparation, and the placement of structural fill. C&H's report noted that if its recommendations were followed, "it is expected that total and differential settlement will be less than ¾-inch." The condominium constructed for the 139 Project ended up settling over four inches.

¶8 The developer of the 139 Project sued Malmquist in March of 2019, alleging negligence, professional negligence, and breach of contract relating to the construction of the building. Malmquist tendered the suit to Travelers Insurance, seeking defense and indemnity as an additional insured under C&H's commercial general liability (CGL) Policy No. 680-J940924-18-47 (the Policy). The Policy contained a blanket additional insured endorsement which would require a written contract between C&H and Malmquist for additional insured status to apply, as well as a professional services exclusion. Travelers denied coverage to Malmquist for two reasons: (1) that Malmquist was not covered as an additional insured under the blanket additional insured endorsement because there was no written contract reflecting such between C&H and Malmquist, and (2) separately, even if Malmquist was named as an additional insured, the Policy's professional services exclusion would bar coverage. Malmquist eventually paid over $2.2 million to repair the building and settle the lawsuit against it.

¶9 Malmquist filed the present lawsuit against Rames on June 3, 2020. After Rames filed its Answer, both parties filed competing motions for summary judgment.

5

Malmquist's summary judgment motion requested the District Court find in its favor on the issue of liability because Rames failed to procure the coverage requested, misrepresented the coverage procured, and breached the standard of care. Rames's motion for summary judgment asserted Rames did not owe a duty to Malmquist and it was unreasonable for Malmquist to rely on the certificate of insurance showing Malmquist was an additional insured and that, even if Malmquist was an additional insured under C&H's CGL policy, the Policy's professional services exclusion barred coverage. After the parties fully briefed the competing summary judgment motions, the District Court held a hearing on February 8, 2022. The District Court thereafter issued its Orders Re[:] Summary Judgment on February 28, 2022. The court's order granted Malmquist's motion for summary judgment and denied Rames's motion for summary judgment. The court found Rames did have a duty to procure the additional insured coverage, negligently failed to do so, negligently misrepresented that it had, and breached the standard of care. In addition, the court found the Policy's professional services exclusion would not have barred coverage for defense and indemnity.

¶10 With liability established following the District Court's summary judgment order, the matter proceeded to a jury trial. At trial, Rames sought to admit a portion of the deposition of Hayley Scheel (Scheel), Malmquist's office manager, wherein she was cross-examined regarding 24 other certificates of insurance from other subcontractors on Malmquist projects as evidence of Malmquist's comparative negligence. The District Court prohibited the introduction of this evidence, finding testimony regarding the other certificates was not relevant and would unnecessarily confuse the jury. Rames also sought

6

to introduce testimony from Tyler Frank (Frank), the owner of Malmquist, regarding Malmquist's contract with the 139 Project owner and that contract's requirement that the owner be named as an additional insured on the CGL policies of all subcontractors. The District Court again prohibited the introduction of this evidence, finding it would unnecessarily confuse the jury because it was "not the contract that is being litigated in court" and the owner had been fully compensated.

¶11 Before trial, the parties attempted to stipulate to as many jury instructions as possible. Relevant to this appeal, both Malmquist and Rames proposed modified versions of the pattern general pre-jury selection instruction which attempted to set forth the background of the case. The relevant portion of Instruction No. 1 as proposed by Malmquist stated:

> Plaintiffs brings this lawsuit against Central Insurance Agency alleging the insurance agency is liable for failing to procure insurance coverage for Malmquist. I have made certain pretrial rulings in this case where I have determined Central Insurance Agency is liable for failing to procure insurance coverage for the benefit of Malmquist. Central Insurance Agency was requested to add Malmquist as an additional insured on their general liability policy, on a primary and non-contributory basis. Central Insurance Agency, through one of its employees, Tracy Waddell, did not obtain that insurance coverage. I have found Central Insurance Agency liable for negligence due to its failure to procure the coverage requested of it and which Central Insurance Agency agreed to provide. I have held that Central Insurance Agency is liable for the coverage it did not procure for Malmquist. I have also found Central Insurance Agency liable for negligent misrepresentation due to Ms. Waddell's false representation to Malmquist that Malmquist was listed as an additional insured on a primary and non-contributory basis. I have also determined Malmquist reasonably relied on the false representations to its detriment. Central Insurance Agency claims Malmquist was comparatively negligent for failing to have a written subcontract agreement containing insurance requirements. It will be for you to determine if Malmquist was comparatively negligent, and if so, the extent to which it may have been negligent.

The relevant portion of Instruction No. 1 as proposed by Rames stated:

> This lawsuit arises out of a construction project in Whitefish, the 139 Second Street East project, for which Malmquist Construction was the general contractor. Malmquist Construction hired C&H Engineering to perform soils testing on the project site before construction started. The Court has concluded that C&H Engineering was required to name Malmquist Construction as a scheduled additional insured on its Commercial General Liability policy. C&H Engineering had asked its insurance agent, Central Insurance Agency, to name Malmquist Construction as a scheduled additional insured on its CGL policy. Central Insurance Agency concluded that C&H Engineering's CGL policy already had a blanket additional insured endorsement as part of the policy so it issued a certificate of insurance and provided it to Malmquist Construction. The certificate of insurance stated that Malmquist Construction was an additional insured on C&H Engineering's CGL policy. The blanket additional insured endorsement, however, required there be a written contract between Malmquist Construction and C&H Engineering before Malmquist Construction was considered an additional insured on the CGL policy. A scheduled additional insured endorsement would not have required a written contract between Malmquist Construction and C&H Engineering. During construction, the building experienced settlement in excess of industry standard. Claims were made against Malmquist Construction by the building owner and the City of Whitefish, which owned the building next door. The building owner filed a lawsuit against Malmquist Construction. Other parties brought into the lawsuit include C&H Engineering, Slopeside Engineering, and Archer Excavation. The lawsuit and the City of Whitefish's claims were settled by the parties. Malmquist Construction and Cincinnati Insurance Company filed this lawsuit seeking to recover amounts they paid to settle the lawsuit and claim due to the fact it was not an additional insured on C&H Engineering's CGL policy as set forth on the certificate of insurance issued by Central Insurance Agency.

On the morning of the first day of trial, the parties attempted to settle this instruction. Malmquist indicated it had "a revised number 1" which "took much of [Rames's] language" and then included further facts largely mirroring Malmquist's originally Proposed Instruction No. 1 relating to the bases for the District Court's summary judgment order because Malmquist "believe[d] it's important for the jury to understand at the outset

8

that the [c]ourt has already found that [Rames] is liable for negligence, and then the issues that are left are comparative negligence and damages." Counsel for Malmquist noted the parties disagreed on whether the District Court's summary judgment order was limited to a ruling that Rames "had to specifically get scheduled additional insured coverage" or whether the equivalent was acceptable. Rames objected to the instruction "with regard to the scheduled additional insured endorsement versus equivalent" and asserted Malmquist was trying "to change their argument and position for trial because it benefits them at trial." The parties made further arguments relating to this disagreement, and the District Court informed counsel it would "make that determination before we begin."

¶12 Though it informed the parties it would "be using Plaintiffs' Proposed Instruction Number 1 as part of the introduction of this case," the District Court ultimately gave its own Instruction No. 1,[1] essentially combining the background provided by both parties' proposed instructions, which, in relevant part, stated:

> This lawsuit arises out of a construction project in Whitefish known as 139 Second Street East project for which Malmquist Construction was the general contractor. Malmquist Construction hired C&H Engineering to perform soils investigation on the project and provide opinions on the bearing capacity of the soils before construction started. C&H Engineering asked its insurance agent, Central Insurance Agency, to name Malmquist Construction as an additional insured on its liability policy. Central Insurance Agency agreed to procure the one million dollars in additional insured coverage for Malmquist Construction. Central Insurance Company provided Malmquist Construction a Certificate of Insurance which stated and certified that

---

[1] Through context, it appears likely this instruction was the one allegedly revised and proposed by Malmquist during discussions on the morning of trial; however, as previously noted, Malmquist's "revised" proposed Instruction No. 1 was never filed and does not appear in the District Court record. Due to Malmquist's apparently revised instruction not being filed, we are unable to say this is the case for certain.

Malmquist Construction was an additional insured on C&H Engineering's liability policy. During construction the building experienced settlement in excess of industry standard. Claims were made against Malmquist Construction by building owner and City of Whitefish, which owned the building next door. The building owner filed a lawsuit against Malmquist Construction. It was then discovered Central Insurance Agency failed to procure additional insured liability coverage for Malmquist Construction. The lawsuit, and City of Whitefish's claims were settled by the parties. Malmquist Construction and its insurance company, Cincinnati Insurance Company, filed this lawsuit to recover defense costs and the one million dollars limit of additional insured coverage that Central Insurance Agency failed to procure. The Court has already found Central Insurance Agency liable for negligence due to its failure to procure the additional insured coverage requested of it and which Central Insurance Agency agreed to provide. I have held that Central Insurance Agency is liable for the coverage it did not provide for Malmquist. I have also found Central Insurance Agency liable for negligent misrepresentations due to Central Insurance Agency's false representation to Malmquist that Malmquist was listed as an additional insured on a primary and noncontributory basis. I have also determined Malmquist reasonably relied on the false representation to its detriment. Central Insurance Agency claims Malmquist was comparatively negligent. It will be for you to determine if Malmquist was comparatively negligent. You will be asked to determine the amount of damages caused by Central Insurance Agency's failure to procure negligence and negligent misrepresentation.

Rames did not contemporaneously object to this instruction when read by the District Court. The relevant portion of the District Court's signed Instruction No. 1, which was the instruction actually sent back with the jury, as reflected in the court's file, however, was identical to Malmquist's originally proposed Instruction No. 1:

Plaintiffs brings this lawsuit against Central Insurance Agency alleging the insurance agency is liable for failing to procure insurance coverage for Malmquist. I have made certain pretrial rulings in this case where I have determined Central Insurance Agency is liable for failing to procure insurance coverage for the benefit of Malmquist. Central Insurance Agency was requested to add Malmquist as an additional insured on their general liability policy, on a primary and non-contributory basis. Central Insurance Agency, through one of its employees, Tracy Waddell, did not obtain that insurance coverage. I have found Central Insurance Agency liable for

10

negligence due to its failure to procure the coverage requested of it and which Central Insurance Agency agreed to provide. I have held that Central Insurance Agency is liable for the coverage it did not procure for Malmquist. I have also found Central Insurance Agency liable for negligent misrepresentation due to Ms. Waddell's false representation to Malmquist that Malmquist was listed as an additional insured on a primary and non-contributory basis. I have also determined Malmquist reasonably relied on the false representations to its detriment. Central Insurance Agency claims Malmquist was comparatively negligent for failing to have a written subcontract agreement containing insurance requirements. It will be for you to determine if Malmquist was comparatively negligent, and if so, the extent to which it may have been negligent.

Rames also did not contemporaneously object to the written instruction not matching the instruction orally given by the District Court.

¶13 The jury found Malmquist suffered $1,022,257.85 in damages due to Rames's negligence, representing $1 million in loss of coverage and $22,257.85 in defense costs. The jury also found that Malmquist was not negligent with respect to additional insured coverage. The District Court entered its Final Judgment in favor of Malmquist and against Rames in the amount of "$1,205,518.63[,] comprised of the $1,022,257.85 verdict, $2,976.64 in costs and $180,284.14 in pre-judgment interest" on November 22, 2022. Rames appeals. Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶14 We review a district court's grant or denial of summary judgment de novo, applying the same criteria as M. R. Civ. P. 56. *Hudson v. Irwin*, 2018 MT 8, ¶ 12, 390 Mont. 138, 408 P.3d 1283. Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Hudson*, ¶ 12.

11

¶15 "We review a district court's decision on the admissibility of evidence for an abuse of discretion. A district court has broad discretion in determining whether evidence is relevant and admissible. It abuses its discretion when it acts arbitrarily without employment of conscientious judgment or so exceeds the bounds of reason as to work a substantial injustice." *H.E. Simpson Lumber Co. v. Three Rivers Bank*, 2013 MT 312, ¶ 14, 372 Mont. 292, 311 P.3d 795 (citing *Wheaton v. Bradford*, 2013 MT 121, ¶ 13, 370 Mont. 93, 300 P.3d 1162).

¶16 We review a district court's selection of jury instructions for an abuse of discretion. *Labair v. Carey*, 2016 MT 272, ¶ 14, 385 Mont. 233, 383 P.3d 226. "Taken in their entirety, 'jury instructions must fully and fairly instruct the jury regarding the applicable law.'" *Labair*, ¶ 14 (quoting *Goles v. Neumann*, 2011 MT 11, ¶ 9, 359 Mont. 132, 247 P.3d 1089).

## DISCUSSION

¶17 *1. Whether the District Court erred by granting Malmquist's motion for summary judgment regarding liability.*

¶18 Rames asserts the District Court improperly resolved disputed issues of material fact at the summary judgment stage, erred as a matter of law by concluding a certificate of insurance (COI) can form the basis of negligence and negligent misrepresentation claims when the only direct contact between Rames and Malmquist was the COI, and erred by determining Malmquist justifiably relied on the COI which contained warnings and disclaimers. Malmquist contends the District Court properly granted summary judgment

12

regarding liability because Rames owed a duty to procure the additional insured coverage it agreed to procure, then failed to procure the coverage and misrepresented it existed.

¶19 "The essential elements of a negligence claim are the existence of an applicable legal duty owed by the defendant to the claimant, breach of that duty, causation of harm, and resulting pecuniary damages." *Kipfinger v. Great Falls Obstetrical & Gynecological Assocs.*, 2023 MT 44, ¶ 16, 411 Mont. 269, 525 P.3d 1183 (collecting cases). Negligence claims are typically unsuitable to resolution at summary judgment due to the prevalence of factual issues, though summary judgment may be appropriate when reasonable minds could not draw different conclusions from the evidence. *Walden v. Yellowstone Elec. Co.*, 2021 MT 123, ¶ 14, 404 Mont. 192, 487 P.3d 1. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Hudson*, ¶ 12. "A material fact is one that concerns the elements of the cause of action or defenses at issue to an extent that requires resolution of the issue by a trier of fact." *Krajacich v. Great Falls Clinic, LLP*, 2012 MT 82, ¶ 8, 364 Mont. 455, 276 P.3d 922 (citing *Corporate Air v. Edwards Jet Ctr. Mont., Inc.*, 2008 MT 283, ¶ 24, 345 Mont. 336, 190 P.3d 1111).

¶20 At base, Rames asserts it owed no duty to Malmquist because Malmquist was not Rames's client. It was, after all, C&H who requested Rames procure additional insured coverage for Malmquist's benefit. "The question of duty is a problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other." *Seal v. Hart*, 2002 MT 149, ¶ 31, 310 Mont. 307, 50 P.3d 522 (citing *Larson-Murphy v. Steiner*, 2000 MT 334, ¶ 31, 303 Mont. 96, 15 P.3d 1205). "The existence of a legal duty

13

is a question of law to be determined by the court." *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶ 17, 342 Mont. 335, 181 P.3d 601 (collecting cases). The District Court found Rames did owe a duty to Malmquist because C&H requested Rames procure additional insured coverage for Malmquist and Rames agreed to do so. We agree.

¶21 "Montana law requires a client's request to procure certain insurance, followed by an agent's commitment to do the same to put the agent under a 'duty' to procure." *R.H. Grover, Inc. v. Flynn Ins. Co.*, 238 Mont. 278, 284, 777 P.2d 338, 341 (1989). "Absent a duty, there can be no negligent failure to procure insurance." *Grover*, 238 Mont. at 284, 777 P.3d at 341. The basic facts of this case make it clear Rames was under a duty to procure the additional insured coverage. Rames's client, C&H, directed Rames to obtain the additional insured coverage which Malmquist "need[ed]," and directed Rames to email the certificates reflecting such to Malmquist. C&H specifically provided Rames with an example certificate showing exactly what additional insured coverage Malmquist "need[ed]" under C&H's CGL policy—to be "named as an Additional Insured with respect to General Liability, including Primary/Non-Contributory and Completed Operations coverage, per forms CG2010 0413 and GC2037 0413 or equivalent." Rames committed to do so, emailing to both Malmquist and C&H a COI which (falsely) represented that Malmquist was "listed as an additional insured on a primary and noncontributory basis for General Liability[.]"

¶22 In addition to the duty created by committing to obtain the additional insured coverage after being directed to do so, Rames owed, as all parties do, "a general common law duty to use reasonable care under the circumstances to avoid causing foreseeable harm

14

to others." *Anderson v. ReconTrust Co., N.A.*, 2017 MT 313, ¶ 11, 390 Mont. 12, 407 P.3d 692 (citations omitted). "The existence of a duty 'turns primarily on foreseeability.'" *Eklund v. Trost*, 2006 MT 333, ¶ 40, 335 Mont. 112, 151 P.3d 870 (quoting *Lopez v. Great Falls Pre-Release Servs.*, 1999 MT 199, ¶ 27, 295 Mont. 416, 986 P.2d 1081). Waddell, the Rames agent tasked with obtaining additional insured coverage, testified the additional insured coverage was valuable, it was fair for C&H and Malmquist to rely on the COI she sent to believe the coverage stated in the COI was secured, and her email certified and represented to C&H and Malmquist that Malmquist was listed as an additional insured on a primary and non-contributory basis as described in the COI. Waddell did not actually obtain the additional insured coverage. It is foreseeable that a party may be harmed when it believes it has insurance coverage but does not. *See Cleveland Indians Baseball Co., L.P. v. N.H. Ins. Co.*, 727 F.3d 633, 639 (6th Cir. 2013) (explaining it is reasonably foreseeable that an additional insured will be harmed when an insurance agency fails to procure the intended coverage, just as the primary insured would be). And no public policy considerations would bar the imposition of a duty on Rames here, *see Fisher*, ¶ 28, because it is reasonable to expect an insurance agent to secure the coverage it agreed to procure and represented existed. Imposing a duty on an insurance business to act with reasonable care and not misinform its customers regarding their insurance coverage clearly comports with public policy considerations.

¶23    In addition, "[t]his Court has recognized and adopted the long-standing principle of tort law that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Lokey v. Breuner*, 2010 MT 216,

15

¶ 10, 358 Mont. 8, 243 P.3d 384 (internal quotation marks and citations omitted). "[O]ne who acts gratuitously must then act with due care." *Lokey*, ¶ 10. Rames assumed the responsibility to act with due care when it undertook to obtain the additional insured coverage for Malmquist's benefit requested by C&H.

¶24 The District Court, after finding Rames owed a duty to Malmquist under the facts of this case, granted Malmquist's summary judgment motion and determined Rames was liable for negligence and negligent misrepresentation. In finding Rames liable for negligence, the District Court additionally found Rames liable for negligent failure to procure insurance. On appeal, Rames contends the District Court's order incorrectly found liability for negligence and negligent misrepresentation and misinformed the jury when it informed them the court also found Rames liable for negligent failure to procure insurance. Malmquist asserts the District Court correctly granted summary judgment on all three variations of negligence, and that Rames's argument the court did not make a finding regarding negligent failure to procure insurance in its summary judgment order is incorrect.

¶25 A successful negligence action requires the plaintiff to prove four elements: duty, breach, causation, and damages. *Kipfinger*, ¶ 16. Rames was instructed by C&H, its client, to have Malmquist "named as an Additional Insured with respect to General Liability, including Primary/Non-Contributory and Completed Operations coverage, per forms CG2010 0413 and GC2037 0413 or equivalent." Rames then did not obtain the coverage requested, harming Malmquist when it discovered it was not actually named as an additional insured after the building began sinking. The jury found Malmquist was damaged in the amount of $1 million in loss of coverage, the amount for which Malmquist

16

would have been covered as an additional insured but for Rames's negligence, and $22,257.85 in defense costs. The jury also found Malmquist was not comparatively negligent. The material facts underpinning these conclusions find no genuine dispute, as Waddell, the Rames agent tasked by C&H with procuring additional insured coverage for Malmquist's benefit and who was identified as the expert witness Rames would call at trial, repeatedly testified to them in her deposition. Waddell testified the email from Hjalmarsson was a request to add Malmquist as an additional insured on C&H's policy; the request was for Malmquist's additional insured coverage to be primary and non-contributory; and the request was specific as to the coverage needed, i.e., coverage "per forms CG2010 0413 and GC2037 0413 or equivalent." Waddell, in contravention of what the COI represented to the parties, actually obtained no additional insured coverage for Malmquist.

¶26 Rames places great weight on the subject lines of the emails exchanged between Malmquist and C&H—repeatedly highlighting how the new vendor packet was sent in an email regarding the Solem Project, not the 139 Project. The District Court correctly rejected this argument as a red herring, because the emails between C&H and Malmquist regarding the separate projects are subject to the linear progression of time. The Solem Project was the first project C&H was hired to work for Malmquist, and as such, it was in that string of emails that C&H received the new vendor packet with its requirement that Malmquist be added as an additional insured on C&H's CGL policy. Though Malmquist and C&H discussed the 139 Project earlier in the year, it was not until a couple of months after C&H was hired for the Solem Project that Malmquist was hired by the developer for

17

the 139 Project and, subsequently, C&H was hired by Malmquist for the same. By that time, C&H was not a new vendor, but an established one who was already required to have named Malmquist as an additional insured on its CGL policy. C&H and Malmquist operated under the assumption this had already been done when the 139 Project came to be because C&H had already filled out the new vendor packet and both parties had received the COI from Rames. Additionally, the subject lines of the emails between C&H and Rames contain no project specifics—simply the direction by C&H that Rames obtain additional insured coverage for Malmquist and Rames's (false) representation it had done so. The material facts do not regard what email strings occurred between C&H and Malmquist, but the clear directive from C&H to Rames regarding additional insured coverage.

¶27    Regarding negligent failure to procure, we disagree with Rames that the District Court's summary judgment order did not find liability on this issue and therefore the court misinformed the jury when it told them liability for negligent failure to procure had been established. The court's order, in its negligence section, found "the breach of an agreement to procure coverage for a third party is actionable; [C&H] requested [Rames] to procure specific additional insured coverage for Malmquist's benefit, and [Rames] agreed to do so. [Rames], therefore, had an absolute duty to procure the coverage and is liable for damages for failing to do so." While perhaps the District Court could have made this finding clearer by setting it forth in its own section—as it did for negligence and negligent misrepresentation—the finding was in fact made in the court's order. And it was correct, because C&H requested Rames obtain additional insured coverage for Malmquist's benefit

18

and Rames agreed to do so but did not actually obtain coverage—a breach of its duty to procure. *Grover*, 238 Mont. at 284, 777 P.2d at 341. "If an insurance agent is instructed to procure specific insurance and fails to do so, he is liable for damages suffered due to the absence of such insurance." *Bailey v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 119, ¶ 20, 370 Mont. 73, 300 P.3d 1149 (collecting cases).

¶28     The District Court's summary judgment order also found Rames liable for negligent misrepresentation. In Montana, a negligent misrepresentation claim requires a plaintiff to prove six elements:

> (1) the defendant made a representation as to a past or existing material fact; (2) the representation was untrue; (3) regardless of actual belief, the defendant made the representation without any reasonable ground for believing it to be true; (4) the representation was made with the intent to induce the plaintiff to rely on it; (5) the plaintiff was unaware of the falsity of the representation and justified in relying upon the representation; (6) the plaintiff, as a result of reliance, sustained damage.

*Romo v. Shirley*, 2022 MT 249, ¶ 21, 411 Mont. 111, 522 P.3d 401. Rames asserts elements (1), (3), and (5) of negligent misrepresentation are not met in this case.

¶29     Once again, the material facts underpinning the District Court's conclusion Rames was liable for negligent misrepresentation find no genuine dispute. C&H tasked Rames with obtaining additional insured coverage for Malmquist's benefit. In response, Rames represented, through the COI, that Malmquist was an additional insured on C&H's CGL Policy. C&H and Malmquist later discovered this representation was untrue, after the building began sinking and Malmquist was sued.

¶30     Regarding element one, Rames contends there is a genuine issue of material fact as to whether the COI even constitutes a representation because it contains disclaimers

19

warning certificate holders that it "does not affirmatively or negatively amend, extend or alter the coverage" and that "a statement on this certificate does not confer rights to the certificate holder in lieu of [] endorsement(s) [required by certain policies]." While it is true the COI contains such disclaimers, Rames's expert, Waddell, testified the COI was a certification and representation she secured the coverage stated in the COI.[2] Regarding elements three and five, once again Waddell's testimony belies Rames's claims genuine issues of material fact exist. Waddell testified she was "certifying and representing to both Malmquist and C&H that Malmquist was listed as an additional insured on a primary and non-contributory basis as described" in the COI; that she was "telling Malmquist and C&H that Malmquist is listed as an additional insured"; and that the only way to specifically list somebody as an additional insured was through a scheduled endorsement. Malmquist was not listed as an additional insured. The Declaration of Mike Depner, Malmquist's expert in this case, further supports Waddell's own testimony that she knew the difference between a scheduled insured and a blanket insured and what was required of each, that the two are not equivalent, and that Malmquist was not actually named as an additional insured. Waddell further testified it was common for parties to not ask for the actual insurance forms but to rely on the COI and it was fair for C&H and Malmquist to rely on the COI in believing the coverage stated within that document was in fact secured.

---

[2] In light of this, we find it unnecessary to address the string of out-of-state cases cited by Rames regarding third party reliance on COI's themselves.

¶31 No genuine issue of material fact precluded summary judgment and Malmquist was entitled to judgment as a matter of law regarding liability. Accordingly, the District Court correctly granted Malmquist's motion for summary judgment.

¶32 *2. Whether the District Court erred by denying Rames's motion for summary judgment and determining the policy's professional services exclusion would not have barred coverage for defense and indemnity.*

¶33 Rames asserts the District Court erred by determining the policy's professional services exclusion would not apply to defeat coverage in the event Malmquist was an additional insured under C&H's policy because Malmquist provided professional services. Malmquist contends its work as a general contractor was not subject to the exclusion. The District Court found the professional services exclusion "would not have barred coverage for defense and indemnity" because the exclusion did not apply to "Malmquist's fairly straight-forward general contracting services rendered in the 139 [P]roject[.]" We agree with the District Court.

¶34 The interpretation of an insurance contract is a question of law. *Newman v. Scottsdale Ins. Co.*, 2013 MT 125, ¶ 22, 370 Mont. 133, 301 P.3d 348. Exclusions in an insurance policy "must be narrowly and strictly construed because they 'are contrary to the fundamental protective purpose of an insurance policy.'" *Newman*, ¶ 35 (quoting *Farmers Union Mut. Ins. Co. v. Oakland*, 251 Mont. 352, 356, 825 P.2d 554, 556 (1992)). "Montana law is well-settled that an insurer's duty to defend its insured arises when an insured sets forth facts which represent a risk covered by the terms of an insurance policy." *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 20, 321 Mont. 99, 90 P.3d 381 (collecting cases). "If the insured demonstrates that the claim falls within the scope of coverage, the

21

burden shifts to the insurer to show that the claim is unequivocally excluded under an exception to the basic scope of coverage." *Fire Ins. Exch. v. Weitzel*, 2016 MT 113, ¶ 13, 383 Mont. 364, 371 P.3d 457. "The duty to indemnify is narrower than the duty to defend and arises 'only if coverage under the policy is actually established.'" *Farmers Ins. Exch. v. Wessel*, 2020 MT 319, ¶ 23, 402 Mont. 348, 477 P.3d 1101 (quoting *State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, ¶ 26, 372 Mont. 191, 312 P.3d 403).

¶35    The Policy's professional services exclusion applies to both C&H and to an additional insured under the blanket additional insured endorsement. The relevant language of the exclusion reads:

> **EXCLUSION - ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> 1. The following is added to Paragraph **2., Exclusions, of SECTION I - COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**
> **Professional Services**
> "Bodily injury" or "property damage" arising out of the rendering of or failure to render any "professional services".
>
> .    .    .
>
> 3. The following is added to DEFINITIONS Section:
> "Professional services" means any service requiring specialized skill or training, including:
>
>      a. Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;

22

b. Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor or subcontractor; or

c. Monitoring, testing, or sampling service necessary to perform any of the services described in Paragraph **a.** or **b.** above.

¶36 "[B]ecause exclusions are contrary to the fundamental purpose of the policy, such exclusions are frequently subject to challenge for ambiguity or inconsistency." *Newman*, ¶ 35 (citing *Swank Enters. v. All Purpose Servs., Ltd.*, 2007 MT 57, ¶ 29, 336 Mont. 197, 154 P.3d 52). The phrase "arising out of," when used but not defined in an insurance policy, is ambiguous. *Pablo v. Moore*, 2000 MT 48, ¶ 16, 298 Mont. 393, 995 P.2d 460. "It is well-established that any ambiguity in an insurance policy must be construed against the insurer." *Newman*, ¶ 41 (citing *Wendell v. State Farm Mut. Auto. Ins. Co.*, 1999 MT 17, ¶ 14, 293 Mont. 140, 974 P.2d 623).

¶37 The Underlying Complaint, wherein the 139 Project developer sued Malmquist, alleged Malmquist was engaged to provide general contracting services, to include furnishing "labor, materials, tools[,] and equipment[.]" The developer sued Malmquist for both general negligence and professional negligence. Rames appears to place great stock in Malmquist's admission in response to Rames's summary judgment motion that the professional services exclusion may apply to count two—professional negligence—of the Underlying Complaint; however, it is well settled that "a duty to defend is triggered where one portion of the complaint alleges facts which, if proven, would result in coverage, even if the remaining counts of the complaint would not be covered." *Newman*, ¶ 40. "If a

23

complaint states multiple claims, some of which are covered by the insurance policy and some of which are not, it is a mixed action. In these cases, Montana follows what is known as the mixed-action rule, which requires an insurer to defend all counts in a complaint so long as one count triggers coverage, even if the remaining counts do not trigger coverage." *Weitzel*, ¶ 14.

¶38 We agree with the District Court that the professional services exclusion, which applies to "service[s] requiring specialized skill or training," does not unequivocally exclude coverage for Malmquist's role as a general contractor. Malmquist, as a general contractor, provided services on the 139 Project, such as the furnishing of labor, materials, tools, and equipment, which clearly do not require specialized skill or training. The developer of the 139 Project sued Malmquist for both general and professional negligence. The allegations of general negligence in the Underlying Complaint did not require Malmquist to have specialized skill or training, and therefore the professional services exclusion does not apply to defeat coverage under the facts of this case.[3] In addition, were all coverage excluded for a general contractor which, as one portion of its duties, provides services which could be deemed "professional services" on a project, coverage would be

---

[3] Had Rames named Malmquist as a scheduled additional insured, as it was directed to by C&H and negligently failed to do, the language of the blanket additional insured endorsement would be irrelevant. It would make little sense for Rames to negligently fail to obtain the correct insurance and also benefit from exclusionary language found in the incorrect policy. As the professional services exclusion does not bar coverage under the facts of this case, however, we need not address this point further.

24

illusory under the policy and "policy language which renders coverage illusory is against public policy." *Newman*, ¶ 43.

¶39 The District Court correctly denied Rames's motion for summary judgment and did not err in determining the policy's professional services exclusion did not bar coverage for defense and indemnity.

¶40 *3. Whether the District Court abused its discretion by precluding certain evidence at trial.*

¶41 Prior to trial, the District Court found Rames was negligent as a matter of law when it granted Malmquist's summary judgment motion. "[E]ven when a defendant is negligent as a matter of law, the issue of contributory negligence on the part of the plaintiff and the degree of comparative negligence, if any, is normally an issue for the jury or fact-finder to resolve. Whether a plaintiff was contributorily negligent is a question for the fact-finder, unless reasonable minds could not draw different conclusions from the evidence." *Peterson v. Eichhorn*, 2008 MT 250, ¶ 32, 344 Mont. 540, 189 P.3d 615 (internal citations omitted, collecting cases). Trial, then, focused on whether Malmquist was comparatively negligent and on Malmquist's damages.

¶42 At trial, Rames attempted to introduce evidence regarding how Malmquist handled other subcontractors' COIs by questioning Frank and admitting deposition testimony of Scheel. The District Court rejected both attempts, finding testimony regarding the other COIs on unrelated projects and Malmquist's contract with the owner of the 139 Project were not relevant and could unnecessarily confuse the jury.

25

¶43 "District courts have broad discretion to control the admission of evidence at trial." *Cleveland v. Ward*, 2016 MT 10, ¶ 9, 382 Mont. 118, 364 P.3d 1250. "When reviewing a district court's evidentiary ruling, we do not evaluate whether we would have made the same decision. Rather, we review only for abuse of discretion." *Mont. Petroleum Tank Release Comp. Bd. v. Crumleys, Inc.*, 2008 MT 2, ¶ 75, 341 Mont. 33, 174 P.3d 948 (citing *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561) (internal citation omitted).

¶44 We find no abuse of discretion in the District Court's evidentiary rulings at trial. The court allowed Rames to present evidence relating to Malmquist's comparative negligence regarding subcontractor COIs who worked on the 139 Project—C&H, Archer, and Slopeside—while denying admission of numerous other COIs from uninvolved subcontractors on other Malmquist projects as unnecessarily confusing and lacking in relevance and foundation. Under M. R. Evid. 403, "[t]rial courts must balance the probative value of evidence against the possibility that the evidence will confuse or mislead the jury." *Phillip R. Morrow, Inc. v. FBS Ins. Mont.-Hoiness Labar*, *Inc.*, 236 Mont. 394, 400, 770 P.2d 859, 862 (1989). Testimony on a litany of other COIs, involving parties and projects not relevant to the 139 Project and featuring references to numerous other insurance policy forms and endorsements not applicable to C&H's direction to Rames, the probative value of which was quite low, would unnecessarily mislead and confuse the jury and the court did not abuse its discretion by limiting testimony relating to other subcontractors' COIs at trial.

26

¶45   The District Court also did not abuse its discretion by excluding testimony from Frank regarding Malmquist's contract with the 139 Project owner and that contract's requirement that the owner be named as an additional insured on the CGL policies of all subcontractors. Again, this testimony regarding a contract not at issue in the case would serve to unnecessarily confuse the jury. Regarding the comparative negligence issue at trial, the task at hand was to determine whether Malmquist was comparatively negligent for not questioning Rames's COI which "gave them the false impression that they were covered by insurance," not whether Malmquist upheld its insurance obligations to the 139 Project developer under Malmquist's contract with the developer. Quite simply, Malmquist's contract with the developer was not at issue and not relevant, so testimony regarding the issue would be misleading and confusing to the jury and the District Court properly rejected Rames's attempt to introduce such evidence. Accordingly, the District Court's evidentiary rulings at trial were not an abuse of discretion.

¶46   *4. Whether the District Court abused its discretion in instructing the jury.*

¶47   On appeal, Rames initially asserts Instruction No. 1 "was prejudicial to Rames and should not have been given." Rames contends the instruction contained unnecessary and prejudicial statements setting forth the background of the case and relating to the District Court's summary judgment ruling. Before the District Court, Rames did not object to Instruction No. 1 on these grounds, but because it believed the instruction misstated the court's summary judgment ruling as it related to scheduled insured versus equivalent coverage and because the instruction constituted a change in Malmquist's theory of the case. "This Court consistently has concluded that a party is barred from challenging an

27

instruction on appeal for reasons not raised before the trial court." *Siebken v. Voderberg*, 2015 MT 296, ¶ 30, 381 Mont. 256, 359 P.3d 1073 (collecting cases). Rames's claim on appeal that the instruction's background information was inflammatory and unfairly prejudicial is a change from its objection below and, under normal circumstances, our inquiry would end here. *See Siebken*, ¶ 30. The present case does not involve normal circumstances, however, because we are faced with the highly unusual—and, from the research the Court has done into the matter, possibly unprecedented—situation of a trial court signing and sending back a wholly different written instruction than the one it read to the jury.

¶48     In its reply brief, Rames asserts that, because the District Court read an Instruction No. 1 that varied from the one offered by Malmquist, it did not have the opportunity to object to the instruction as read. On appeal, Rames asserts the "instruction *read at trial* contained unnecessary and prejudicial statements which affected Rames' substantial rights and had the potential to inflame the jury" and it was "[t]he *reading of this instruction* [which] constitutes an abuse of discretion and requires a reversal of the judgment." (Empasis added.) Typically, when a jury is provided written instructions from a trial court, "[t]o the extent a discrepancy exists between the written and oral versions of jury instructions, the written instructions provided to the jury will control." *People v. Wilson*, 187 P.3d 1041, 1069-70 (Cal. 2008); *cf. State v. Martell*, 2021 MT 318, ¶ 22, 406 Mont. 488, 500 P.3d 1233 (recognizing a district court misspoke when reading a jury instruction by saying "on or before," rather than "on or about," the relevant date of a criminal charge, but noting the written instruction contained the proper language and finding the

28

instructions, as a whole, fully and fairly apprised the jury of the applicable law). Here, however, we are not presented with a judge misspeaking while reading an instruction, but one signing and providing to the jury for its deliberations an instruction which was substantially different from the one the trial court read. We find it prudent to permit Rames the opportunity to fully present its objections (to both the oral and written instructions given to the jury) as we agree it did not have a true opportunity to present them below under the unique circumstances presented here. Accordingly, we will address whether either the oral or the written instruction given by the District Court was unfairly prejudicial to Rames.

¶49    "In reviewing whether a particular jury instruction was properly given or refused, this Court must consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial." *Cutler v. Jim Gilman Excavating, Inc.*, 2003 MT 314, ¶ 11, 318 Mont. 255, 80 P.3d 1203. "[I]n appeals concerning the trial court's instructions to the jury, the appellant must establish prejudice from the erroneous instruction." *Payne v. Knutson*, 2004 MT 271, ¶ 17, 323 Mont. 165, 99 P.3d 200 (collecting cases). "An erroneous instruction is not prejudicial where it appears that, even without the instruction, the same verdict would have been reached." *Thayer v. Hicks*, 243 Mont. 138, 151, 793 P.2d 784, 793 (1990); *see also Britton v. Farmers Ins. Group*, 221 Mont. 67, 88, 721 P.2d 303, 316 (1986); *Wolfe v. Schulz Refrigeration*, 188 Mont. 511, 519, 614 P.2d 1015, 1019 (1979).

¶50    Upon our review of the challenged instruction(s), we find Rames has failed to demonstrate it suffered prejudice. Though Rames appears to contend the District Court somehow misinterpreted the import of its own summary judgment order as it related to

29

scheduled insured versus equivalent coverage, we are unconvinced by this argument. Informing the jury Rames had already been found liable by the court for negligence, when in fact it had, does not carry the potential of inflaming the jury—it is simply factual. Neither instruction misinformed the jury of the procedural background of the case. Indeed, the oral version of Instruction No. 1 included much more information than originally proposed by Malmquist in its filed Proposed Instruction No. 1, information which Rames argued below was necessary to give the jury. While we reaffirm that the written instructions given by a trial court to a jury are to match the ones orally given by that court, and recognize that such did not happen here, the District Court's error in either orally giving the wrong Malmquist Proposed Instruction No. 1 or signing the wrong Malmquist Proposed Instruction No. 1 is harmless error in this case as the jury instructions, taken as a whole, fully and fairly instructed the jury. *Labair*, ¶ 14. "A harmless error does not mandate that we reverse a district court judgment; an 'error must cause substantial prejudice' to warrant reversal." *Tipp v. Skjelset*, 1998 MT 263, ¶ 16, 291 Mont. 288, 967 P.2d 787 (quoting *Erickson v. State ex rel. Bd. of Med. Exam.*, 282 Mont. 367, 375, 938 P.2d 625, 630 (1997)).

¶51 Finally, we also briefly address whether plain error review may be warranted under the unique facts of this case. "[T]he plain error doctrine permits review of errors not objected to at trial which result in substantial injustice by denying a party a fair trial." *State ex rel. State Comp. Mut. Ins. Fund v. Berg*, 279 Mont. 161, 173, 927 P.2d 975, 982 (1996) (citations omitted). Rames does not ask this Court to invoke the plain error doctrine on appeal, but asserts the District Court giving Instruction No. 1 constituted reversible error. "'Plain error' generally involves an act or omission of a more serious nature than

30

'reversible error,' and only on rare occasion is the former doctrine invoked in civil cases." *Reno v. Erickstein*, 209 Mont. 36, 42, 679 P.2d 1204, 1208 (1984). Because Rames does not invoke plain error and we have determined the District Court's mistake regarding Instruction No. 1 to be harmless error, we decline to consider Instruction No. 1 under the doctrine. As such, the District Court did not abuse its discretion when it instructed the jury in this case.

## CONCLUSION

¶52 The District Court correctly granted Malmquist's motion for summary judgment regarding liability and did not err by denying Rames's motion for summary judgment and determining the policy's professional services exclusion did not bar coverage for defense and indemnity. In addition, the District Court did not abuse its discretion by precluding certain comparative negligence evidence at trial or when it instructed the jury.

¶53 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE

31