FILED

08/27/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0513

DA 21-0513

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 190N

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

TERRANCE ANTHONY ROBERTS,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-2020-386
Honorable Leslie Halligan, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Chad Wright, Appellate Defender, Deborah S. Smith, Assistant
Appellate Defender, Helena, Montana

       For Appellee:

              Austin Knudsen, Montana Attorney General, Tammy K Plubell,
Assistant Attorney General, Helena, Montana

              Kirsten Pabst, Missoula County Attorney, Mac Bloom, Brittany L.
Williams, Deputy County Attorneys, Missoula, Montana

Submitted on Briefs:  January 31, 2024

Decided:  August 27, 2024

Filed:

                           _____
                                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1　　　Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2　　　Terrance Roberts appeals the Judgment of the Fourth Judicial District, Missoula County, sentencing Roberts to fifteen years and six months in Montana State Prison after the jury found Roberts guilty of Attempted Kidnapping under § 45-5-302, MCA, and Obstructing a Peace Officer under § 45-7-302(1), MCA. On appeal, Roberts asserts multiple issues with the proceedings and sentencing: 1) the District Court instructed the jury with the incorrect mental state standard; 2) the District Court inadequately instructed the jury regarding the definition of "force"; 3) the District Court incorrectly admitted a video exhibit of a responding officer's body camera; 4) the District Court improperly required Roberts to register as a sexual offender; and, 5) the District Court's imposition of a $50 presentence investigation (PSI) fee within the written judgment was improper. In response, the State concedes the PSI fee was erroneously imposed, but argues the District Court's only remaining error was its use of an incorrect mental state definition, which the State contends was not prejudicial to Roberts and therefore does not necessitate reversal of the judgment.

2

¶3    In July 2020, Roberts had been traveling through Montana by bus, on his way to California, and stopped temporarily in Missoula due to a lack of bus fare. The day after he arrived in Missoula, Roberts went to Caras Park, in downtown Missoula, where he obtained and consumed alcohol and various controlled substances.[1]  Recreators in the nearby Brennan's Wave area of the Clark Fork River observed Roberts' use of drugs and several awkward interactions in which he talked to young women and got "very close to them." One recreator, Melissa Boys, felt troubled enough about Roberts' interaction with her to call 9-1-1 afterwards to "remove [Roberts] from the situation." Officer Puddy, while in uniform on bicycle patrol in nearby Bess Reed Park, responded to the area pursuant to Boys' call.

¶4    Meanwhile, Roberts had begun interacting with Z.S., a teenage girl who was surfing at Brennan's Wave with friends. While walking back upriver after going down on her previous attempt, in which she had injured her toe, Z.S. stopped at an overlook platform to watch her friends. Roberts approached Z.S. on the overlook, stood close behind her, about six inches, and began talking to her. Z.S. observed that Roberts was very tall and slurring his speech as if intoxicated. Z.S. was wearing a bikini and became "very uncomfortable," so she slid her surfboard behind her to attempt to block off Roberts and end the interaction. When Roberts persisted, she left the platform, but Roberts followed right behind her and continued conversing, prompting Z.S. to verbalize her discomfort to Roberts. As she looked at Roberts and continued to walk away, Roberts grabbed Z.S.'s right arm and

---

[1] In his sentencing hearing testimony, Roberts recounted drinking hard liquor, smoking marijuana, and injecting "crystal" at the park prior to interacting with the victim.

exclaimed, "You're coming with me." When Z.S. attempted to pull away, Roberts tightened his grip and held Z.S. for ten to fifteen seconds. Z.S. testified she believed she was going to be raped or kidnapped, and hit Roberts with her surfboard, escaping when Roberts' grip loosened and running away from him. She ran until she met up with a father and daughter coming off the river and asked for help. As they did not have cell phones with them, the father offered to retrieve his phone, but Z.S. asked to not be left alone. Thus, she stayed with them until she rejoined her friends, who observed red marks on Z.S.'s arm. They then retrieved their phones from their vehicle and called 9-1-1.

¶5 Upon arriving in Caras Park in response to only Boys' initial call, Officer Puddy identified Roberts awkwardly interacting with another group of women. Puddy, in full uniform with badge displayed, instructed Roberts to move along, and Roberts complied.[2] A few minutes later, Puddy received a dispatch about the 9-1-1 call regarding the incident with Z.S., recognized the physical description as matching Roberts, and began to search for Roberts, locating him at a nearby hotel. Puddy approached Roberts and told him to "stop," but Roberts "trotted and then ran away." Puddy continued to command Roberts to "stop," but he evaded Puddy by traversing a nearby embankment and parking lot, which Puddy could not easily maneuver on his bicycle. After several minutes of the two circling the embankment, Puddy eventually apprehended Roberts when Roberts attempted to re-enter the now-locked hotel. During the entire encounter, Puddy was in uniform and

---

[2] Officer Puddy also testified that he believed he verbally identified himself as a police officer to Roberts.

4

wearing a functional body camera. In a post-arrest interview, Roberts described Puddy as "some bicycle cop or some security guy."

¶6 At trial, Roberts contested little of Z.S.'s account of the incident, and instead contended he should have been charged with the lesser crime of attempted unlawful restraint because the circumstances demonstrated that he did not intend to kidnap Z.S. Relating to the second charge, that Roberts had obstructed a peace officer, the District Court gave a conduct-based "knowingly" instruction: "A person acts knowingly with respect to Obstructing a Peace Officer or Other Public Servant when he is aware of his own conduct." The jury found Roberts guilty of both Attempted Kidnapping and Obstruction of a Peace Officer, and the District Court subsequently sentenced him to fifteen years and six months of prison time, and ordered Roberts to register as a sexual offender "[g]iven the age of the victim and the offense." Roberts appeals, raising the above-stated issues.

¶7 "We review a district court's selection of jury instructions for an abuse of discretion." *TCF Enters., Inc. v. Rames, Inc.*, 2024 MT 38, ¶ 16, 415 Mont. 306, 544 P.3d 206. "In reviewing whether a particular jury instruction was properly given or refused, this Court must consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial." *TFC Enters.*, ¶ 49 (quoting *Cutler v. Jim Gilman Excavating, Inc.*, 2003 MT 314, ¶ 11, 318 Mont. 255, 80 P.3d 1203). "[I]n appeals concerning the trial court's instructions to the jury, the appellant must establish prejudice from the erroneous instruction." *TFC Enters.*, ¶ 49 (citation omitted).

¶8 Roberts contends that reversal of the obstruction charge is warranted because the District Court erroneously gave a conduct-based "knowingly" definition regarding

5

Roberts' evasion of Officer Puddy, thus resulting in a "manifest miscarriage of justice" for purposes of plain error review. The State acknowledges the incorrect definition of "knowingly" was given, but argues the error in no way prejudiced Roberts.

¶9     Obstruction of a peace officer is committed when a person "knowingly obstructs, impairs, or hinders the enforcement of the criminal law[.]" Section 45-7-302(1), MCA. We have explained that, "[f]or a person to knowingly obstruct an officer's lawful duty, the defendant must be aware that [his] conduct is highly probable to hinder the performance of that duty." *State v. Bennett*, 2022 MT 73, ¶ 10, 408 Mont. 209, 507 P.3d 1154. Here, it is clear the District Court provided the jury with the incorrect mental state instruction. Under the results-based standard, the State needed to establish that Roberts was aware that it was highly probable that his conduct would hinder Officer's Puddy's efforts to stop Roberts and investigate the alleged crime, not merely that Roberts was aware of his conduct. However, Officer Puddy was fully uniformed, which displayed his police badge, during both encounters with Roberts, and conducted himself as a figure of authority. Roberts himself later identified Officer Puddy as a "bicycle cop," and the events were captured on video. Nothing in the record gives credence to Roberts' argument and satisfies his burden of establishing that any other trial result could have resulted on this record. As such, no prejudice is shown by the instructional error, and both Robert's claim of plain error and his assertion of ineffective assistance of counsel fail. *See State v. Secrease*, 2021 MT 212, ¶ 13, 405 Mont. 229, 493 P.3d 335 (the *Strickland* IAC test requires that defendants establish both the deficiency of their counsel's assistance *and* the resulting prejudice).

¶10    Roberts also challenges the District Court's instructions defining "force" for the attempted kidnapping charge, and "liberty" for the lesser-include charge of unlawful restraint, contending they were sufficiently problematic to cause prejudice and undermine the jury's decision-making.  Under §§ 45-4-103 and 45-5-302, MCA, a person commits kidnapping when he "knowingly or purposely and without lawful authority [attempts to] restrain[] another person by either secreting or holding the other person in a place of isolation or by using or threatening to use physical force," while a person commits misdemeanor unlawful restraint under § 45-5-301, MCA, by "knowingly or purposely and without lawful authority restrain[ing] another so as to interfere substantially with the other person's liberty."  The District Court instructed that "[a] showing of actual physical violence or threat of personal injury are not required to prove the force necessary to establish the crime of kidnapping," and that, "[a]s used in kidnapping and unlawful restraint, the term 'restrain' requires a substantial interference with the other person's liberty."  However, in response to a jury question about the definition of the term "liberty," the District Court provided, without objection, a definition from Black's Law Dictionary that provided, "freedom from arbitrary or undue external restraint," giving rise to Roberts' appellate argument that the instructions were confusing.

¶11    "Force" is not defined within § 45-5-302, MCA, and while the optimal definition can be debated, it is not subject to dispute that any reasonable juror would have concluded that Roberts used force: he told Z.S. that she was "coming with me," and held her arm tightly enough that she could not escape his grasp for 10-15 seconds until she hit him with her surfboard.  She was left with painful red marks on her arm afterwards.

¶12 As for the District Court's definition of "liberty," we do not find any prejudicial effect from the somewhat confusing interweave between the definition of "liberty" given in response to the jury question as "freedom from arbitrary of undue external restraint" and the originally-given instruction that "[a]s used in kidnapping and unlawful restraint, the term 'restrain' requires a substantial interference with the other person's liberty." While the definitions are somewhat circuitous, they nevertheless provide the gist of the meaning of the words, and any reasonable juror was not likely to interpret their meaning in any way that does not qualify Roberts' actions—tightly holding Z.S. in place against her will for 10-15 seconds—as "restraint." Moreover, whether Roberts was physically incapable of kidnapping Z.S, as he asserted, does not itself defeat the fact that he knowingly or purposefully attempted to do so, in violation of §§ 45-4-103 and 45-5-302, MCA.

¶13 We also do not find that Roberts was in any way prejudiced by the District Court's admission of Officer Jensen's body-camera footage. *State v. Smith*, 2021 MT 148, ¶ 34, 404 Mont. 245, 488 P.3d 531. Officer Jensen also responded to the scene and spoke with Z.S., who was still in obvious distress, and her father, which was captured on Jensen's body-video camera. At trial, Roberts objected to the video as hearsay, while the prosecution argued it was offered for the purpose of demonstrating Z.S.'s distressed demeanor as she told Jensen what had happened, showed him her injury, and guided him to the areas involved in the incident. The State argues the video was admissible as a prior consistent statement or admissible hearsay, but in any event, harmless if inadmissible. Even if the admission was error, we conclude it was harmless, and was duplicative of the account given by Z.S. at trial. *Smith*, ¶ 34.

¶14 Roberts also challenges his designation by the District Court as a sexual offender. Roberts did not object to the designation at sentencing, and we therefore may review his criminal sentence only "if it is alleged that such sentence is illegal or exceeds statutory mandates." *State v. Pine*, 2023 MT 172, ¶ 28, 413 Mont. 254, 548 P.3d 390 (quoting *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979)). However, a "sexual offense" necessitating registration as a sex offender is defined to include "any violation, attempt, solicitation, or conspiracy to commit a violation, or flight after the attempt or commission of . . . kidnapping, if the victim is less than 18 years of age and the offender is not a parent of the victim." Section 46-23-502(10), MCA. As Z.S. was under the age of eighteen at the time of Roberts's offense, and is not related to Roberts, Roberts's actions satisfied the definition of "sexual offense" for which he may be required to register with the sexual offender registry in accordance with § 46-23-504, MCA. Thus, while the District Court's sentencing may have been objectionable, it is not illegal and therefore does not necessitate re-sentencing. *Pine*, ¶ 29 (citing *State v. Kotwicki*, 2007 MT 17, ¶¶ 16-17, 335 Mont. 344, 151 P.3d 892). Additionally, given that the District Court's sentencing was within legal parameters, the failure of Roberts's counsel to object to the designation as a sexual offender does not constitute ineffective assistance.

¶15 Finally, as noted, the State concedes that the District Court improperly imposed a $50 presentencing investigation fee in its written judgment that was not orally pronounced at sentencing.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents

no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17 The judgment of conviction is affirmed. The matter is remanded for sole purpose of entering an amended judgment that removes the PSI fee.

/S/ JIM RICE

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR